THE PEOPLE on the relation of JOHN McCONVILLE, Respondent, v. ISAAC HILLS, Appellant.

(GENERAL TERM, SEVENTH DISTRICT, JUNE, 1869.)

An action in the nature of a *quo warranto* (Code § 432) does not lie against the secretary and treasurer of a railroad company, holding his office as a mere servant thereof, and at the will of its directors.

What constitutes an office, within the meaning of the statute (2 R. S., 581

The People *v.* Hills.

Code, § 432), extending this remedy, must still be determined by the general rules of the common law.

The directors of a railroad company are authorized, but not imperatively required, by the general railroad act (Laws 1850, chap. 140, § 6), to appoint a secretary and treasurer.

The right of *de facto* directors of a corporation, to act as directors, cannot be questioned collaterally in an action, to try the title of their appointee, to his office.   Per J. C. SMITH, J.

The statute (Laws 1850, chap. 389, § 290, amended 1867, p. 92) giving power to the city of Rochester, as the owner of stock of the Rochester and Genesee Valley Railroad Company, to appoint, through its common council, a portion of the board of directors of said company, does not authorize the election of any person to such board who is not a stockholder in his own right, and qualified under § 6 of the general railroad act.   Id.

THIS was an appeal by the defendant from a judgment after trial by the court.

The complaint prayed judgment that the defendant had usurped, and unlawfully held and exercised the office of secretary and treasurer of the Rochester and Genesee Valley Railroad Company, and the rights and franchises appertaining thereto, since the 22d August, 1867, and continued to hold and exercise the same, unlawfully, and for his removal therefrom, and that the relator should be declared to be entitled to the office, &c., since said 22d August, 1867.

The Rochester and Genesee Valley Railroad Company was organized under the general railroad act of 1850. Its articles of association were filed June 10, 1851, and provided for thirteen directors.

The by-laws of the corporation provided that: " The officers of the company, to be appointed by the board of directors, shall consist of a president and vice-president, treasurer, secretary and superintendent, with such number of engineers and other subordinate officers and agents as the directors shall from time to time think proper to appoint;" also, that the president and vice-president should be annually appointed, and that " all other officers or agents of the company, shall hold their respective places during the pleasure of the board of directors."

There were 9,755 shares, of $100 each, of the capital stock

of the company subscribed for, and certificates had been issued for 5,552 shares of full paid up stock.

The city of Rochester was the owner of $300,000 of the paid up stock, for which it had subscribed, pursuant to authority, given under chap. 389, p. 757, Laws 1851, § 285, &c.; and by the action of the company in accepting such subscription, was entitled (§ 290) to nominate and appoint one director of said company for every seventy-five thousand dollars of said stock, which right it exercised until the annual election of the company in 1865.

An act was passed March 9, 1867 (Laws 1867, chap 59, p. 92), amending the act of 1851, and giving the common council of the city, power to appoint one director for every $42,855$\frac{5}{7}$ of its stock, *i. e.*, seven directors instead of four.

On the 13th June, 1867, the common council of the city, elected seven directors of the company for the year ensuing, three of whom were not stockholders, nor qualified to vote for directors in the company, but who were citizens of Rochester, and tax-payers therein; and on the same day a regular annual meeting of the stockholders of the company was held, whereat nine other persons were chosen as directors for the same time.

On the 22d August, 1867, the seven persons elected by the common council as directors met in due form, and organized as a board of directors, and appointed the relator, secretary and treasurer, in place of the defendant, who had been appointed to that office on the 12th of June, 1862; and upon this removal and appointment the relator based his claim to the judgment asked by him.

*Theodore Bacon,* for the appellant.

*W. F. Cogswell,* for the respondents.

Present—E. D. SMITH, JOHNSON and J. C. SMITH, JJ.

By the Court—JAMES C. SMITH, J. This is an action in the nature of *quo warranto*, to oust the defendant from the

offices of secretary and treasurer of the Rochester and Genesee Valley Railroad Company, a corporation organized under the provisions of the general railroad act, passed by the legislature of this State in 1850 (ch. 140).

The cause was tried at the Monroe circuit in April, 1868, without a jury, and a judgment was ordered *pro forma*, in favor of the plaintiffs.

Upon a careful examination of the case, after argument by counsel, on appeal, I am satisfied the judgment cannot be sustained.

We regard the constitutional question raised by the appellant's counsel as virtually decided by this court on a former occasion (46 Barb., 340), and therefore do not consider it.

But there are other points in the case fatal to the plaintiff's claim.

The "offices" in dispute are not offices for which this action will lie, for the reason that the secretary and treasurer are mere servants or agents of the company holding at the will and pleasure of the directors.

The act under which the company was organized, provides that "the directors shall appoint one of their number president; they may also appoint a treasurer and secretary, and such other officers and agents as shall be prescribed by the laws" (§ 6).

The provision does not make it the imperative duty of the directors to appoint a secretary or treasurer; they may themselves, if they prefer, perform by committee, or otherwise, the duties usually devolving on those officers; and the secretary and treasurer, when appointed, are removable at any time at the pleasure of the directors, or at least for cause satisfactory to them.

The only effect of a judgment against the defendant would be his removal from office; but such a judgment would be nugatory, for the directors might immediately reinstate him. (*Commonwealth* v. *Dearborn*, 15 Mass. 125; *The King* v. *Corp. of the Bedford Level*, 6 East., 356.)

In England, the rule has been laid down, that *quo war*

*ranto* will lie for usurping any office, provided the office be of a public nature; and a substantive office, not merely the function or employment of a deputy or servant, held at the will or pleasure of another, in which latter case, the information will not properly lie. (*Darley* v. *The Queen*, 12 Cl. & Fin. 520, 541; *The Queen* v. *Fox*, 8 Ell. & Bl.; 92 E. C. L. R., 939; *The King* v. *Justices of Herfordshire*, 1 Chitty, 700; 18 E. C. L. R., 206)

Our statute (2 R. S., 581, § 28; Code, § 432), has extended the remedy to any public office, civil or military, or any fran chise within this State, or any office in a corporation created by the authority of this State; but the question, what constitutes an " office " within the meaning of the rule laid down by the cases above cited, is not affected by the statute.

The respondent's counsel argues, that the action can be maintained, as it necessarily involves the validity of the election of the directors constituting the board of directors, by whom the respective claimants were appointed. But the action is not brought to oust the directors who appointed the defendant; they are not parties to the suit; they will not be bound by the judgment rendered in it; and, as has been said, if the defendant should be removed by the judgment, they could reinstate him. I apprehend, the title of the directors, by whom the defendant was chosen (who were at least directors *de facto*), cannot be inquired into, collaterally, in this action. (*Symmers* v. *The King*, Cowp., 489, per LORD MANSFIELD, p. 507; *The King* v. *Mein*, 3 T. R., 596; *The King* v. *Hughes*, 4 Barn. & Cr., 368; 10 E. C. L. R., 358; *People* v. *Stevens*, 5 Hill, 616, per BRONSON, J., 629, 630.) It can only be attacked directly in an action for that purpose.

But if it were competent, in the present action, to inquire into the validity of the title of the directors constituting the board of directors, by whom the respective claimants were appointed, it would be found that four of the seven, by whom the defendant was removed, and the relator was appointed, were ineligible at the time of their election, by reason of the fact that they were not then stockholders of the company.

The general act provides, that no person shall be a director of a corporation formed under its provisions unless he shall be a stockholder, owning stock absolutely in his own right, and qualified to vote for directors at the election at which he shall be chosen (§ 5). The counsel for the relator insists, that this provision has been repealed by subsequent acts, enabling the city of Rochester to become a stockholder, and to elect a certain number of the directors. (Laws 1851, chap. 389, §§ 286, 290; Laws 1867, vol. 1, p. 92, chap. 59.)

That construction cannot be upheld. The acts of 1851 and 1867, contain no express repealing words; they do not menti n the provision of the act of 1850, claimed to be repealed, or refer to it in any way; and they are not contrary to it. Both acts are merely affirmative, and may stand together.

The policy of the requirement, that none but stockholders shall be eligible to the office of directors, is obvious, as well in the case of the directors chosen by the city, as of those elected by the stockholders at large. It is, that each member of the board of directors shall have a direct pecuniary interest in the welfare of the road. Under the act of 1867, the city may chose a majority of the board. There is nothing in the language of the act to warrant the implication, that the legislature intended that persons, not stockholders, should control the affairs of the corporation, or that all the directors should not be subject to one and the same rule of eligibility.

These views lead to a reversal of the judgment.

Judgment reversed.