MILLER, J.  This is an action for personal injuries.  The defendant appeals from an order denying a motion for a bill of particulars respecting the plaintiff's injuries.  The complaint contains a general allegation that the plaintiff was permanently injured, followed by a statement that:

"His left hip was bruised and injured, his nervous system was shocked and injured, and he was otherwise bruised and injured about the head, body, and limbs."

It is well settled that in such case the defendant is entitled to a bill of particulars specifying the injuries claimed to be permanent.  The physical examination authorized by the Code of Civil Procedure (section 872) does not serve the purpose of a bill of particulars.  Baker v. New York City Railway Co., 116 App. Div. 858, 102 N. Y. Supp. 276.

The order should be reversed, and the motion granted, requiring the plaintiff to serve a bill of particulars specifying the injuries claimed to be permanent.

Order reversed, with $10 costs and disbursements, and motion granted, requiring the plaintiff to serve a bill of particulars specifying the injuries claimed to be permanent, with costs.  All concur, except HIRSCHBERG, P. J., not voting.

---

LORD v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES et al.

(Supreme Court, Special Term, Nassau County.  January 8, 1908.)

1. CONSTITUTIONAL LAW—STATUTES—STOCKHOLDERS—VESTED RIGHT.
Insurance Law, Laws 1892, p. 1955, c. 690, § 52, as amended by Laws 1906, p. 773, c. 326, providing that, on reincorporation or amendment of the charter of any life insurance company having capital stock, it may, by a majority vote of its directors, confer on its policy holders, or on such policy holders as may have a prescribed amount of insurance, the right to vote for all or any less number of directors in such manner not inconsistent with any provision of the chapter as may be authorized by a vote of the stockholders representing at least a majority of the capital stock, is not unconstitutional as depriving stockholders of their vested right to vote for a majority of the directors; the Legislature being authorized to so amend the charters of insurance companies and limit the voting power of stockholders by Const. 1846, art. 8, § 1, and 1 Rev. St. (1st Ed.) p. 600, pt. 1, c. 18, tit. 3, § 8, authorizing the alteration, amendment, or repeal of all corporate charters.

2. INSURANCE—CORPORATIONS—ELECTION OF DIRECTORS—CHARTER—MODIFICATION.
The charter of the Equitable Life Assurance Society (Laws 1853, p. 887, c. 463), in so far as it provided for the election of directors who should be the holders of at least five shares of the corporation's stock, was subject to the reserved power of the Legislature to alter and amend, as provided by Const. 1846, art. 8, § 1, and 1 Rev. St. (1st Ed.) p. 600, pt. 1, c. 18, tit. 3, § 8, and was amended by Stock Corporation Law, Laws 1892, p. 1828, c. 688, § 20, providing that policy holders of insurance corporations shall be eligible to election as directors.

3. SAME—VACANCIES—APPOINTMENT TO FILL.
Where policy holders in a stock insurance company were eligible to election as directors, as expressly provided by Stock Corporation Law, Laws 1892, p. 1828, c. 688, § 20, policy holders not stockholders were eligible to appointment to fill vacancies.

4. CORPORATIONS—DE FACTO DIRECTORS—POWERS.

De facto directors of a corporation have power to act for the corporation while continuing in such position.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1240–1245.]

5. INSURANCE—PROXIES—TRUST AGREEMENT.

Where, after the execution of a voting trust agreement, including a majority of the stock of an insurance corporation, for the purpose of amending the corporation's charter to bring about mutualization, a special act was passed authorizing such amendment, such agreement, though invalid as a voting trust, while unrevoked, constituted a valid proxy or written authority to the trustees to vote the stock, especially where it was voted in accordance with the express approval and consent of the stockholder.

Suit by Franklin B. Lord against the Equitable Life Assurance Society of the United States and others. On demurrer to the supplemental complaint. Sustained.

Henry De Forest Baldwin, for plaintiff.

Alexander & Green (William B. Hornblower and Allan McCulloh, of counsel), for defendant society.

CRANE, J. The litigation between the plaintiff and the defendants has heretofore received the attention of the courts (47 Misc. Rep. 187, 94 N. Y. Supp. 65; 109 App. Div. 252, 96 N. Y. Supp. 10); but, an act of the Legislature having subsequently been passed (Laws 1906, p. 763, c. 326) under which the society has acted or attempted to act, the plaintiff by supplemental complaint attacks the constitutionality of that law and the legality of the steps taken under it, all of which comes before me on demurrer of the defendant to the sufficiency of this supplemental complaint and the previous amended complaint, both being taken together under stipulation as the plaintiff's final pleading in this case. While there are questions now presented which could not have been before the courts in the decisions heretofore rendered, yet the decisions, cited above, contain such a complete statement of the society's history in so far as applicable here and the plaintiff's connection with the organization that it is unnecessary for me to do more than repeat such parts thereof as make plain my position.

The Equitable Life Assurance Society of the United States was incorporated in 1859 under and pursuant to chapter 463, p. 887, of the Laws of 1853; its charter declaring the capital to be $100,000 in cash, divided into 1,000 shares of $100 each, drawing semiannual dividends of 3½ per cent. The board of directors, it was provided, should consist of 52 persons, each of which should be a proprietor of at least 5 shares of stock and be elected by plurality vote; every stockholder being entitled to one vote for each share of stock held by him, which vote might be given in person or by proxy. It was further provided that at any time after the incorporation of the defendant the board of directors thereof might, after giving notice at the two previous stated meetings of the said board, by a vote of three-fourths of all the directors, provide that each holder of a life policy of the defendant who should be insured by the defendant in the sum of not less than $5,000 should be entitled to one vote at an annual election, and that such vote

should be in person, not by proxy. The insurance business was to be conducted on the mutual plan, and the policy holders were allowed to receive at stated periods out of the net surplus created an equitable share thereof in the manner specified. Prior to the times in question the business of the company had so enormously increased that in May of 1905 there were outstanding 560,000 policies of life insurance of the defendant; the total amount thereof exceeding $1,495,000,000. After deducting all possible and contingent liabilities of every kind and the dividends to which policy holders by the terms of their policies might be entitled, a very large surplus, greatly exceeding the original capital of $100,000, was left remaining, to which the stockholders claim the right of disposition. Whether from this last fact, or from the power which a small number of shares possessed over such a large amount of money at the disposal of the company, or from some other reason, a share of stock of $100 par value, receiving 7 per cent. annual dividend, rose in value to $5,000.

The cardinal points to be here considered are that by the charter of the defendant directors were to be proprietors of five shares of stock; stockholders were entitled to vote for all the directors, each share of stock representing one vote (unless policy holders were given a vote by three-fourths vote of directors in accordance with the terms of the charter); the directors thus elected by the stockholders were to control the company's affairs, and, directly or indirectly, its surplus, for accumulation or distribution; and that the value of the stock had greatly increased. In 1905, by reason of dissensions elsewhere referred to and unnecessary here to repeat, a change was proposed and attempted to be carried through whereby it was sought to take from the stockholders the right and power to elect all of the directors and transfer to the policy holders the privilege of electing a majority of the board. This plan was not pursued under the original charter provision for mutualization, but in accordance with the claimed authorization of section 52, c. 690, p. 1955, of the Laws of 1892 (the insurance law), amended by Laws 1901, p. 1779, c. 722, wherein it was given to a pre-existing corporation, by a majority vote of its directors, to reincorporate under said insurance law and adopt a new or amended charter, with any and all changes from its existing charter to cover and enjoy any and all the privileges and provisions of existing laws which might be so included and enjoyed if it were originally incorporated thereunder, and wherein any domestic insurance company was given the power to amend its charter or certificate of incorporation by inserting therein any statement or matter which might originally have been inserted therein. The board of directors of the defendant in March, 1905, approved an amended charter and sought to have the same adopted as the charter of the company. Policy holders of 12 months' standing were given by this proposed amended charter the right to elect 7 out of every 13 directors to be elected and the stockholders the other 6; that is, of the 52 directors the policy holders were to elect 28 and the stockholders 24, thus passing the control of the company and its management over to the policy holders, and, of course, lessening the power of the stock, and necessarily, we may assume, its commercial value.

The plaintiff, owner of 36 shares of the defendant's stock, at this point in the company's affairs procured from the Supreme Court an injunction restraining the company and its directors from adopting the proposed amended charter as illegal and in derogation of its vested rights. Mr. Justice Maddox granted the injunction, and after a most careful and thorough review of the law and the facts decided (his opinion is to be found at page 187 of 47 Misc. Rep. and page 65 of 94 N. Y. Supp.) that the plaintiff's right to vote for directors was a vested right, beyond the power reserved by the Constitution and the Revised Statutes over corporations, and that if section 52, c. 690, p. 1955, of the Laws of 1892 gave to the directors the authority to amend the company's charter, so as to deprive the plaintiff of the right to vote for all the directors, it was unconstitutional. On appeal (109 App. Div. 252, 96 N. Y. Supp. 10), while the injunction order was sustained, it was upon the ground that the insurance law gave to the company no such power to amend its charter in the way proposed; the majority of the court holding, however, that such power had been reserved to and resided with the Legislature, to be used in a clearly and specifically expressed act.

The facts which have occurred since the bringing of this action in April, 1905, and which were not before the courts in the previous proceedings, are as follows: It having been virtually decided by the Appellate Division, as above stated, that section 52 of the insurance law was not broad enough to cover the proposed action of the directors, an act was passed in April, 1906 (chapter 326, p. 773, of the Laws of 1906) amending section 52 of the insurance law of 1892 so as to give to life insurance companies having capital stock the right to change their charters along the lines heretofore attempted by this defendant. The amendment added the following:

"Upon the reincorporation, or upon the amendment of the charter of any life insurance company having a capital stock, * * * it may by a vote of a majority of its directors confer upon its policy holders, or upon such policy holders as may have a prescribed amount of insurance upon their lives, the right to vote for all or any less number of the directors in such manner not inconsistent with any provision of this chapter as may be authorized by a vote of the stockholders representing at least a majority of the capital stock at a meeting of stockholders called for the purpose."

The Equitable Society, abandoning its previous attempts, immediately proceeded to comply with this act of 1906, and mutualized its management by electing policy holders as a majority of the board of directors, and under this system the society has been and now is doing business. Subsequent, however, to the bringing of this action and the granting of the preliminary injunction June 1, 1905, above referred to, and prior to any steps taken under the law of 1906, certain changes had taken place in the ownership of the majority of the stock and in the directorate, which require consideration, because both are attacked. Five hundred and one shares, being a majority of the company's stock, were sold by James H. Hyde to Thomas F. Ryan, who thereupon transferred the same to Grover Cleveland, Morgan J. O'Brien, and George Westinghouse by a voting trust agreement dated June 15, 1905, which recited the desire upon the part of the directors of the society to so amend the charter that 28 of the 52 directors should

be elected by the policy holders and 24 by the stockholders, and that the consummation of the plan had been prevented by litigation. This instrument gave to the trustees the exclusive right to vote on said stock for the election of directors so that 7 out of every 13 persons elected should be policy holders selected by or on behalf of the policy holders in accordance with a scheme therein described. It further provided that the existing certificates of stock were to be surrendered and canceled, and new certificates issued to the trustees pursuant to this voting trust agreement. The following paragraph extended the trustees' power:

"Third. The trustees are authorized, in respect of said stock, to take, in their discretion, by vote thereon or otherwise, any action necessary or proper to effect the consummation of said plan for the mutualization of the society, by securing to the policy holders the right to elect directly twenty-eight of the fifty-two directors of the society, or a like proportion of the entire number of directors, of which the board of directors shall from time to time consist."

In case of vacancies on the board of directors the trustees were empowered to make recommendations to the directors as to the persons to be elected to fill such vacancies, and were further authorized to empower any one of their number to actually cast their vote. The agreement was to continue for five years in accordance with section 20 of the general corporation law (Laws 1901, p. 975, c. 355). After this agreement went into effect, vacancies on the board were filled with policy holders, who were not, however, proprietors of five shares of the society's stock, but all of whom acted as directors at the times herein mentioned. On May 31, 1906, the board of directors, which included the policy holders appointed to fill vacancies as stated, called a meeting of the stockholders for the purpose of authorizing an amended charter in accordance with the provisions of chapter 326 of the Laws of 1906. At the meeting of the stockholders held June 18, 1906, held in pursuance to the call, a majority of the stock voted to approve and authorize an amended charter, in most respects similar to the one proposed in 1905, and which gave to the policy holders the right to elect 28 out of the 52 directors. Six hundred and sixty-seven shares were voted in favor and 80 shares against said amended charter, and of this majority stock Grover Cleveland, representing himself and his co-trustees, with the express approval and consent of the grantor, Thomas F. Ryan, voted 501 shares. The board of directors, thereafter meeting on June 20, 1906, by resolution adopted the said new and amended charter as approved by the stockholders, and authorized the president and secretary to take the necessary steps to carry it into force and operation in accordance with the said act. At these meetings of the directors a majority of the board was constituted by including the policy holders who had been appointed directors to fill vacancies, but were not proprietors of five shares of stock.

All of the above matters have been set forth by the plaintiff at length, and more fully than I can here state them, in his supplemental complaint, and in asking this court to adjudge the amended charter illegal and void he attacks all of the proceedings on three grounds: (1) That chapter 326 of the Laws of 1906, in so far as it takes from this plaintiff the right to vote for all of the directors and gives to the policy

holders an exclusive right to vote for the majority thereof, is unconstitutional. (2) That, if the said act be constitutional, a majority of the directors of the company never voted for the amended charter, as the majority acting including policy holders not stockholders, and therefore they were disqualified as directors. (3) That the amended charter was never authorized by stockholders representing a majority of the stock, as the voting trust agreement under which Mr. Cleveland acted at the stockholders' meeting was illegal and void. The defendant has demurred to this supplemental complaint on the ground that the facts alleged in the complaint are insufficient to maintain the plaintiff's action.

The constitutionality of the act of 1906 has in effect been already passed upon by the Appellate Division in its decision in this case. 109 App. Div. 252, 96 N. Y. Supp. 10. The proposed charter of 1905 was in its main features the same as this amended charter adopted in 1906. Both took from the stockholders the right to vote for all of the directors and gave to the policy holders the exclusive right to vote for the majority thereof. The power of the Legislature to thus amend the society's charter and limit the voting power of the plaintiff's stock was carefully considered by Mr. Justice Woodward in his opinion, and the conclusion reached was, as I read that opinion, that the reservation contained in article 8, § 1, of the Constitution of 1846 and in 1 Rev. St. (1st Ed.) p. 600, pt. 1, c. 18, tit. 3, § 8, to alter, amend, or repeal all laws and charters of incorporation, gave to the Legislature the power to do that which has here been done. Of course, the reserve power to alter or amend laws and charters is not unlimited, but is as stated in the case of Miller v. State, 15 Wall. (U. S.) 478, 21 L. Ed. 98:

"Power to legislate, founded upon such a reservation in a charter to a private corporation, is certainly not without limit, and it may well be admitted that it cannot be exercised to take away or destroy rights acquired by virtue of such a charter, and which by a legitimate use of the powers granted have become vested in the corporation; but it may safely be affirmed that the reserved power may be exercised, and to almost any extent, to carry into effect the original purposes of the grant or to secure the due administration of its affairs so as to protect the rights of the stockholders and of the creditors and for the proper disposition of the assets. * * * Attempt is made in this case to show that the right to elect all of the directors except four had become vested in the stockholders owning a minority of the shares, and that the amendatory act giving to the city the power to elect seven impairs that vested right; but the court is entirely of a different opinion, as the Legislature, in conceding that right, made the concession subject to the reserved power to alter or repeal the charter, as ordained in the Constitution of the state and also in the several statutes mentioned, which clearly give to the Legislature the power to augment or diminish the number or to change the apportionment as the ends of justice or the best interests of all concerned may require."

If there is any doubt about the Appellate Division having passed upon and settled this question, so far as I am concerned, it would seem as though this case just cited was strictly in point and upheld the constitutionality of this Act of 1906. To the same effect may be cited Looker v. Maynard, 178 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79; Wright v. Minnesota Mutual Life Insurance Co., 193 U. S. 659, 24 Sup. Ct. 549, 48 L. Ed. 832; Polk v. Mutual Reserve Fund Life Association (decided by United States Supreme Court, December 2, 1907) 207 U. S. 310, 28 Sup. Ct. 65, 52 L. Ed. ——; Barnes v. Arnold, 45

App. Div. 314, 61 N. Y. Supp. 85; Hinckley v. Swarthchild & Co., 107 App. Div. 470, 95 N. Y. Supp. 357.

Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, is not opposed to this conclusion, although it states that the right of stockholders to vote for directors is a vested right of property. The court was there dealing with the action of stockholders among themselves and the advantage which one stockholder had wrongfully gained over another, and in no way passed upon the right or power of the Legislature to affect the voting power of all the stock. The vested right of the stockholder is necessarily subject to the reserve power of the Legislature, and this case does not hold to the contrary.

The plaintiff claims that the act of 1906 is permissive merely, and not mandatory, and that mutualization can therefore only be accomplished by and with the consent of all the stockholders. While the act may be permissive, yet it indicates the way in which the change may be made, and specifically mentions that the authority and vote of the majority of the directors and of the stockholders representing a majority of the stock shall be sufficient to accomplish the change.

Under the plaintiff's second point of attack it is true that the charter of 1859 provided that the directors should be proprietors of five shares of stock each; but this the Legislature under its reserve power had the right to change and modify, and in my opinion did so modify by section 20 of the stock corporation law (Laws 1892, p. 1828, c. 688). The provision is:

"Policy holders of insurance corporations shall be eligible to election as directors."

If eligible to election, why not eligible by appointment to fill vacancies? At the time, therefore, that the board of directors, consisting in part of policy holders not stockholders, took action under the Laws of 1906 on the proposed amended charter, it was in my opinion a legally constituted board, and its call for a meeting of the stockholders and its subsequent ratification of the action of the stockholders were legal and not void acts. Even if the policy holders were not duly qualified as directors, it is stated in the complaint that they were appointed to fill vacancies, assumed to act as directors, and continued so to act at the times therein mentioned. If they were acting illegally, the plaintiff as a stockholder had his remedy against them or the board; and I doubt very much whether he can now attack them collaterally by attacking their acts as he seeks to do here. As de facto directors they could act for the company while continuing in the position. 2 Cook on Corporations, 623; Langan v. Francklyn (City Ct. Brook.) 20 N. Y. Supp. 404; In re Santa Eulalia Silver Mining Co., 51 Hun, 640, 4 N. Y. Supp. 174, affirmed 115 N. Y. 657, 21 N. E. 1119; Trustees of Vernon Society v. Jesse Hills, 6 Cow. 23, 16 Am. Dec. 429; People v. Hills, 1 Lans. 202; Wallace v. Walsh, 125 N. Y. 26, 25 N. E. 1076, 11 L. R. A. 166.

The claim that the vote of the stockholders was illegal because the voting trust agreement was void is hardly tenable. An owner of stock under section 21 of the general corporation law may vote his stock by proxy. No particular form of proxy is specified, except that it is re-

quired to be in writing. Also by section 20 of the same law a stockholder may by agreement transfer his stock to other persons for the purpose of vesting in them the right to vote thereon for a time not exceeding five years upon terms and conditions stated. Even if the terms and conditions stated in this voting trust agreement between Mr. Ryan and the trustees were illegal in face of the decision of the court which had just been rendered, yet the third paragraph of that trust agreement above quoted at least authorized the trustees to take any legal steps as representing the stock to bring about the mutualization of the company. After the Legislature made voting by stockholders for mutualization legal, the unrevoked trust agreement was vitalized for this purpose. The agreement certainly was good at all events as a proxy or written authority to vote the stock, especially in view of the allegations of the complaint that Grover Cleveland voted with the express approval, and consent of the said Thomas F. Ryan. Either Ryan or the trustees had the right to vote, and Mr. Ryan has not objected to the action of the latter. Why should others be heard to object?

Considering the power in the Legislature to authorize the Equitable Life Society to modify its charter so as to permit policy holders to elect the majority of the board of directors, it would seem as though chapter 326 of the Laws of 1906 had been passed for the very purpose of enabling this defendant to accomplish this purpose. The business as conducted by the insurance companies had been investigated, and the joint committee of the Senate and Assembly appointed to examine the affairs of life insurance companies had made a report reciting the attempts of the Equitable Society to mutualize its management by a new or amended charter, set forth in full the plaintiff's suit and the decision of the Appellate Division which had prevented the carrying out of the defendant's plans because of no positive and specific legislative authority permitting the same, and also the sale of the Hyde stocks to Ryan and the trust agreement. Thereupon the proposed amendments to the insurance law were adopted and became chapter 326 of the Laws of 1906. No other sensible conclusion can be reached than that, in view of these reports and the information which the Legislature had before it, this act was intended to enable the defendant to accomplish its mutualization in the way and by the means and methods it has adopted.

For the reasons stated, I find the act of 1906 constitutional, and the mutualization of the Equitable to have been legally carried out and in accordance with the conditions and provisions of that act, and I therefore sustain the demurrer.