WALLACE & SONS, Appellants, *v.* FREDERICK WALSH et al., Respondents.

The by-laws of a corporation organized under the General Manufacturing Act (Chap. 40, Laws of 1848), authorized its trustees to alter and amend them at their discretion; by such an amendment the number of trustees was reduced from twelve to nine; thereafter, but nine trustees were elected at the annual meetings of stockholders, and the business of the corporation was conducted by a board composed of that number; the annual reports were signed by six trustees. *Held,* that this was a sufficient compliance with the provisions of said act (§ 12), requiring such reports to be signed by a majority of the trustees, to prevent a recovery of the penalty imposed for a non-compliance with said provision; and this, although a certificate of the fact of such reduction was not filed in the office of the county clerk and secretary of state as required by the statute (Chap. 269, Laws of 1860, as amended by chap. 316, Laws of 1878); that the proceedings of the board, concurred in by all having an interest in the corporation, effected a practical reduction, and constituted the nine thereafter elected a *de jure* as well as a *de facto* board.

*It seems* that the question of the legality of the change could only be raised in a direct proceeding by one whose interests were affected.

Where the acting board of trustees of such a corporation, in fact authorized by it and having possession of its property and franchises and undisputed control in the management of its affairs, has filed and published within the time limited the annual report required by said provision, certified by a majority of such board and verified by its president, it has complied with the letter and spirit of the law, and it is not competent, in an action by a creditor of the corporation against said trustees under said provision, for plaintiff to show that some of the acting trustees were not duly elected or for some reason were disqualified from acting, or to claim that, by reason of a non-performance or an irregularity in the performance of some prior duty enjoined upon the stockholders, that said board had no authority to perform the general duties required of them as agents of the corporation.

*Rex* v. *Varlo* (1 Cowp. 248); *Rex* v. *Bellringer* (4 D. & E. ) 810; *Rex* v. *Miller* (6 id. 268); *Bailiff, etc.,* v. *Phillips* (4 Ad. & El. 550); *People ex rel. Hawes* v. *Walker* (23 Barb. 304); *Ex parte Willcocks* (7 Cow. 402); *Moore* v. *Rector, etc.,* 4 (Abb. [N. C.] 51), distinguished.

Reported below, 52 Hun, 328.

(Argued October 28, 1890; decided December 2, 1890.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made April 30, 1889,

which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George S. Hastings* for appellants. The plaintiffs' cause of action was fully and duly proved. (*Squires* v. *Brown*, 22 How. Pr. 35; Laws of 1860, chap. 269; Laws of 1867, chap. 248; Laws of 1878, chap. 316; S. & J. on Mfg. Corp. § 25; Angell & Ames on Corp. § 345; *Curtin* v. *F. M. Society*, 3 Daly, 20.) The certificate of incorporation having fixed the number of trustees at twelve, and the trustees having failed legally to reduce such number, the report signed by six trustees only, dated January 18, 1888, was not a compliance with the law, and must utterly fail to relieve the trustees from the liability fixed by statute. (S. & J. on Corp. [1st ed.] § 32; *Moore* v. *Rector, etc.*, 4 Abb. [N. C.] 51; *Rex* v. *Bellringer*, 4 T. R. 810; *Rex* v. *Miller*, 6 id. 268; *Rex* v. *Varlo*, 1 Cowp. 248; *Rex* v. *Morris*, 4 East. 17; *Rex* v. *Devonshire*, 1 Barn. & Ald. 609; *Bailiffs* v. *Phillips*, 4 Ad. & El. 550; *Field* v. *Field*, 9 Wend. 398; *Rex* v. *May*, 4 B. & Ad. 843; *People* v. *Walker*, 23 Barb. 304–308; *Ex parte Willcocks*, 7 Cow. 409; *Durant* v. *Abendroth*, 69 N. Y. 149; *C. C. Co.* v. *O'Keefe*, 120 id. 603.)

*Edwin Nottingham* for respondents Walsh and others. The liability imposed by the statute is in the nature of a penalty, and the provisions of the section must be strictly construed against the party seeking to impose the liability, and liberally in favor of the party upon whom the liability is sought to be imposed. Also, the provisions of the section should be construed with reference to the object they were intended to accomplish, and when two or more constructions will accomplish the object intended, that construction must be preferred which imposes the lesser liability. (*Whitaker* v. *Masterton*, 106 N. Y. 280; *W. A. Co.* v. *Barlow*, 63 id. 63; *S. & H. Q. Co.* v. *Bliss*, 27 id. 299; *Cameron* v. *Seaman*, 69 id. 401; *Bruce* v. *Platt*, 80 id. 381.) The object which the statute was intended to accomplish, viz.: The furnishing to creditors,

and other persons dealing with the corporation, full and true information as to its financial condition at stated periods, will be fully accomplished by requiring the report to be signed by only a majority of the elected and acting trustees, and such being the case, a report signed by such majority must be held to meet the requirements of the law. At least this must be the case when the elected and acting trustees are not less than the minimum number permitted by law. (Laws of 1848, chap. 40, §§ 1, 3; Laws of 1883, chap. 322; *Cornell* v. *Roach,* 101 N. Y. 373; *Boughton* v. *Otis,* 2 id. 262; *Garrison* v. *Howe,* 17 id. 465; *S. & H. Q. Co.* v. *Bliss,* 27 id. 299; *W. A. Co.* v. *Barlow,* 63 id. 67; *Cameron* v. *Seaman,* 69 id. 401; *Bonnell* v. *Griswold,* 80 id. 129; *Whittaker* v. *Masterton,* 106 id. 277.) The construction for which the plaintiff contends would lead to great injustice and hardship and to absurd results, which are to be avoided, if possible, in the construction of this statute. (Laws of 1848, chap. 40, §§ 3, 7, 26; Laws of 1883, chap. 232; *Squires* v. *Brown,* 22 How. Pr. 43; *O. & C. Co.* v. *Croome,* 14 Hun, 165; *Bruce* v. *Platt,* 80 N. Y. 379; *Cornell* v. *Roach,* 101 id. 377; Laws of 1878, chap. 316; *Martin* v. *N. F. P. M. Co.,* 44 Hun, 140.) While the provisions of chapter 316 of the Laws of 1878 prescribe a method of reducing the number of trustees of a corporation, the method so prescribed is not the only method, and is not exclusive of all others. (Laws of 1868, chap. 269; Laws of 1867, chap. 248; Laws of 1848, chap. 40, § 1; Laws of 1855, chap. 425; Laws of 1865, chap. 368; Laws of 1872, chaps. 248, 609; Laws of 1875, chaps. 130, 267.)

*Smith, Kellogg & Wells* for respondent Stevens. The six trustees who signed such reports constituted a majority of the trustees within the meaning and intent of said act; and the defendants in this action are not liable. (Laws of 1860, chap. 269.) The defendants are not liable because the company failed to elect twelve trustees; it would be no ground for dissolving the corporation, and its omission, if any, in that respect, cannot be taken advantage of in any collateral pro-

ceeding. (*Raisbeck* v. *Oesterricher*, 4 Abb. [N. C.] 444;
*Betts* v. *Betts*, Id. 317, 391; Code Civ. Pro. § 1785; *Castle*
v. *Lewis*, 13 Hun, 298; *Denike* v. *N. Y. & R. L. & C. Co.,*
80 N. Y. 599.) These provisions are enacted on grounds of
public policy, for the protection of creditors and the preven-
tion of fraud upon the public in respect to the financial con-
dition of such corporations. (*M. Bank* v. *Bliss*, 35 N. Y.
412–416; *Dabney* v. *Stevens*, 10 Abb. Pr. [N. S.] 39; *Bird*
v. *Hayden*, 2 id. 61; *McHarg* v. *Eastman*, 35 How. Pr. 205;
*Wiles* v. *Suydam*, 64 N. Y. 173.) Being a penal statute, it is
to be strictly construed wherever the penalty is sought to be
enforced, and to prevent the injustice which a strict literal
interpretation would have worked in many instances, the
courts have invariably so construed it as to hold trustees only
liable for their own default and misconduct. (*Vincent* v.
*Sands*, 11 Abb. Pr. [N. S.] 370; *Dabney* v. *Stevens*, 10 id.
44; *Garrison* v. *Howe*, 17 N. Y. 465; *Boughton* v. *Otis*, 21
id. 262.) Penal statutes and those in derogation of common
right are not to be extended beyond their express words or
their clear import. (4 Mass. 145, 473; *Sprague* v. *Birdsall*,
2 Cow. 419; *P. R. Co.* v. *Robbins*, 22 Barb. 662; *Wright* v.
*Briggs*, 2 Hill, 77; *People* v. *Lambier*, 5 Den. 9; *Donaldson*
v. *Wood*, 22 Wend. 395; *Millered* v. *R. R. Co.*, 9 How. Pr.
238; 11 N. Y. 593.) The object of the statute has been com-
plied with. (*S. & H. Q. Co.* v. *Bliss*, 27 N. Y. 297, 299;
*Garrison* v. *Howe*, 17 id. 465; *Oviatt* v. *Hughes*, 41 Barb.
541.) There is no claim that the plaintiff dealt with the com-
pany or gave it credit on the faith that the six who signed the
report constituted a majority of the trustees named in the
certificate, hence there are no equities in the plaintiff's favor;
he seeks to enforce a penal liability, under the statute, and to
have the statute applied to a state of facts or case not fairly
within its language. This he cannot do. (*Crau* v. *Easterly*,
4 Lans. 513, 522; *Kirkland* v. *Kille*, 99 N. Y. 390; *Bruce*
v. *Platt*, 80 id. 379, 381; *Garrison* v. *Howe*, 17 id. 458;
*Miller* v. *White*, 50 id. 137; *W. A. Co.* v. *Barlow*, 63 id. 62;
64 id. 173; 103 id. 242–244; *Allen* v. *Clark*, 6 N. Y. S. R. 393.)

Certainly the trustees who signed, published and filed the proper report, those who did their duty, should not be subjected to a penalty, and are not liable. (*Boughton* v. *Otis*, 29 Barb. 196.)

RUGER, Ch. J. This action was brought against the defendants, as trustees of the "Syracuse Stove Company," to recover an indebtedness owing to the plaintiff by that corporation, upon the ground that such trustees had become personally liable therefor, by reason of their neglect to make and publish the annual reports, for the years 1887 and 1888, of the financial condition of the corporation as required by statute. (§ 12, chap. 40, Laws of 1848.)   The company was incorporated under the law of 1848 as a manufacturing corporation, and the language of the statute imposing the duty of making reports, so far as it affects this case, reads as follows: "Every such company shall, within twenty days from the first day of January," in each year, "make a report, which shall be published in some newspaper, etc.,   *   *   *   which shall state the amount of capital, and of the proportion actually paid in and of the amount of its existing debts, which report shall be signed by the president and a majority of the trustees," and shall be verified, filed, etc., "and if any of said companies shall fail to so do, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made."

It is not disputed but that in each of the years named a report was made, filed and published in good faith by the company, which truthfully and accurately stated each of the several facts required to be incorporated in such report, and that such report was signed and verified by the president and a majority of the acting board of trustees of such company. That board, as actually constituted at the time of making these reports, and for several years prior thereto, consisted of nine members, and six of such trustees united in making these reports.

It thus appears that the reports were made and verified exactly in accordance with the requirements of the statute, and the company must be held to have duly executed the duty

imposed upon it, unless, for some ulterior reason, it shall be adjudged not to have done so. It is claimed by the plaintiff that the requirements of the statute were not complied with, because such reports were not signed by a majority of the trustees whom the company was authorized to elect under its charter, and that the trustees signing did not constitute a majority of such theoretical number. The certificate of incorporation provided that the number of trustees to manage the concerns of the company, for the first year, should consist of twelve, but since the year 1885 the stockholders had, in fact, elected but nine trustees. The number signing the reports was six, and because six is not a majority of twelve it is claimed that the trustees became liable for the debts of the corporation, as a penalty for an omission by the company to make reports.

The undisputed evidence in the case shows that the Wolfe Stove Manufacturing Company was incorporated on the 3d day of February, 1883, under chapter 40 of the Laws of 1848, and on the 28th day of March, 1885, its corporate name was duly changed, by an order of the Supreme Court, to the Syracuse Stove Company; that upon the organization of the original company certain by-laws were adopted, among which was one providing that " the number of its trustees should be twelve, and who shall, respectively, be stockholders in the company; " and another authorizing its trustees to alter and amend its by-laws at their discretion; and that on January 28, 1885, the by-laws were duly amended by a resolution of the board of trustees reducing the number of trustees from twelve to nine. But it is claimed that because a certificate of the fact of such reduction was not filed in the office of the county clerk and secretary of state, as provided by chapter 269 of the Laws of 1860, as amended by chapter 316 of the Laws of 1878, the act of the company in reducing the number of trustees was ineffective for any purpose. That the company had the power, under the statute, to determine absolutely the number of trustees who should constitute its board within the limits of not less than three or more than thirteen, is not contro-

verted, or but that if it had determined and legally manifested its determination to have but three trustees, it could lawfully have done so. After such reduction was attempted to be made no more than nine trustees were ever elected by the stockholders, and the business of such corporation was thereafter conducted by a board composed of that number during the years 1885, 1886, 1887 and 1888, and no question was, at any time thereafter, raised as to their right to exercise the powers of a regular board of trustees. The trustees were empowered by the by-laws of the corporation to appoint to any vacancies which should occur in their board, but the right to elect trustees was vested exclusively in the stockholders. Whether an omission by the stockholders at an annual meeting to elect a full board, under any circumstances, would create a vacancy which might be supplied by the trustees under the by-laws, is a matter of some doubt, but in a case where the board itself is constituted under a declaration on the part of both stockholders and trustees that a full board should consist of nine members only, and nine only were elected, we think it would be a clear case of usurpation for a board so constituted to declare the existence of vacancies, and, of its own motion, appoint additional trustees to fill such vacancies.

It cannot, we think, be doubted, but that the proceedings referred to, concurred in by every one having an interest in the corporation or its affairs, effected a practical reduction of the number of its trustees, and constituted the nine thereafter elected, a *de jure*, as well as a *de facto* board, entitled to act for the corporation in transacting its business until some party, whose interests were affected, should raise the question in a direct proceeding to question the exercise of such authority. (*People* v. *N. Y. & M. B. R. Co.*, 84 N. Y. 566.) Neither the company nor its trustees or stockholders could have been heard to allege in a collateral proceeding, the invalidity of their action in reducing such board, or its want of authority to administer the general affairs of the corporation. Whatever might have been the effect upon the corporation of a direct proceeding by the attorney-general, or

otherwise, to test the legality of their action in reducing such number, or by doing business with an insufficient or defective board, we think such action could not, collaterally, be assailed and tried in a proceeding wherein the question was only incidentally involved. So far as the plaintiff and the public were concerned, the whole object and purpose of the statute was accomplished by the reports published, and no one has been injured or aggrieved, either by what has heretofore been done, or omitted by the corporation. The purpose of the provisions of the statute is to inform the public and those interested in the affairs of the company, of its financial standing and condition from time to time. (*S. & H. Quarry Co.* v. *Bliss*, 27 N. Y. 297; *Garrison* v. *Howe*, 17 id. 465.) And when such information has been published in good faith in the manner and form pointed out by the statute, the trustees have done all that was in their power to comply with the provisions of the statute, and to avoid the incurrence of a penalty for the non-performance of the duty imposed. When a board of trustees, in fact authorized by the corporation, and having possession of its property and franchises, and undisputed control in the management of its affairs, has filed and published within the time limited the report required by the statute, certified by a majority of such board, and verified by the president, it has, we think, complied with the letter and spirit of the law.

It is not competent, we think, in such proceedings as this, for the creditors to show, with a view of creating a penalty or forfeiture, that some of the acting trustees were not duly elected, or for some reason, were disqualified from acting as such trustees, or to claim by reason of a non-performance or an irregularity in the performance of some prior duty enjoined upon stockholders, that an acting board of trustees was not, in fact, a board authorized to perform the general duties required of them as agents of the corporation.

The immediate effect of plaintiffs' contention is to procure the judgment of the court that since the year 1885 the cor-

SICKELS—VOL. LXXX.          5

poration has not possessed a legal board of trustees, and that the management of its affairs for the succeeding period has been conducted in violation of the provisions of its charter, and without authority of law. The direct effect of such an adjudication would necessarily be, not only to declare its existence illegal and subject it to a forfeiture of its franchises, but to expose its contracts and enterprises to the taint of illegality. Certainly the plaintiffs have no right to ask for such an adjudication in any direct proceeding, and, we think, they cannot accomplish the same object indirectly. It was said in *Denike* v. *N. Y. & R. Lime & C. Co.* (84 N. Y. 605), that "A corporation owes its life to the sovereign power, and under what circumstances it shall forfeit or be deprived of that life, depends upon the same power. A corporation may be dissolved by forfeiture through abuse or neglect of its franchises, but such forfeiture, unless there be special provisions by statute can only be enforced by the sovereign in some proceeding instituted in its behalf." And in *Matter of N. Y. El. R. R. Co.* (70 N. Y. 338) it was said that "a cause of forfeiture cannot be taken advantage of, or enforced against a corporation, collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, and the government creating the corporation can alone institute the proceeding, and it can waive a forfeiture."

We think this proceeding comes within the spirit and meaning of the rule referred to, and should be governed by the principle applying to such cases.

We also think the action of the plaintiffs must fail for the reason that their argument requires the court to supply, by construction, language to a statute which does not by its terms cover the case presented by them. The plaintiffs' construction of section 12 of the act of 1848, clearly requires that we should hold that a majority of its trustees must consist of a majority of a constructive board, and not a majority of an existing board. This contention requires language to be supplied to the statute, which shall extend its effect beyond the

literal meaning of the terms employed, and.is contrary to the well-settled rules on the.subject. The courts have uniformly refused to extend a penal act beyond the strict letter of the statute, in order to bring a case within its meaning which was not clearly embraced in its letter. (*Garrison* v. *Howe*, 17 N. Y. 465.) The contention of the appellants here is founded upon the purest technicality and may in justice be met by an equally technical answer.

When a party has been injured by a wrongful or unauthorized exercise of power, either by the constituent elements, or the executive board of a corporation, undoubtedly the law will supply, in some way, redress for the wrong inflicted; but it cannot be lawful or just to make one party responsible for the debts of another, through a loose construction of a statute imposing a penalty for an omission to perform an act which has, in fact, been performed and its purpose effectually accomplished. Under such circumstances, the case is not within the spirit of the act and, under well-settled rules, must be held to be without its meaning.

The appellants have cited a number of cases arising in England, and also in this state, in support of their contention, but we have been unable to find among them any that can be deemed authority upon the question under consideration. The several English cases of *Rex* v. *Varlo* (1 Cowp. 248); *Rex* v. *Bellringer* (4 Durn. & East, 810); *Rex* v. *Miller* (6 id. 268); *Bailiff, etc.,* v. *Phillips* (4 Adol. & Ellis, 550), were.similar to each other in character and determined by the same general considerations. They each involved the powers of municipal corporations created by grants from the crown or parliament, in the exercise of their political jurisdiction, and the authority of the municipal administration in appointments to office, the election of members of parliament, and the performance of similar duties. The questions arose in direct proceedings by *quo warranto* to test the authority of certain officers to exercise the duties of their offices, who claimed to have been appointed by the municipal authorities. The power of appointment in these cases was given to the mayor and a majority of a definite

number of burgesses, and the mayor and burgesses were given authority, in case of vacancies occurring in the number of burgesses, to fill them by election or appointment. It was held that the municipal authorities could not lawfully make such appointments through the concurrence of a less number than a majority of the whole number of burgesses, when, by the neglect of the municipal authorities to fill vacancies, they had permitted that body to become reduced in number so that a majority of the whole could not be obtained to meet for corporate action.

It is manifest that no analogy exists between the action of a body of men invested with the exercise of political power, under special conditions, and the action of the trustees of a private corporation in the conduct of its ordinary business operations. The one relates to the execution of powers, and the other to the performance of duties and the enjoyment of privileges. The one is controlled by the principles governing the relations of principal and agent, and the other to the general rules regulating the consequences following a neglect or disobedience of the requirements of statutes affecting private relations. In the one case the question as to what is a good execution of a power is involved, and in the other as to what may be considered an adequate performance of a duty. These questions are manifestly controlled by different rules, and that which is required in one is not an authority for the requirements of the other. "The extent of a power, like the extent of an agency created by written power of attorney, must be sought for in the instrument conferring the power, and authority not found there does not exist." (*Hetzel* v. *Barber*, 69 N. Y. 13.)

The cases cited in this state are, for similar reasons, equally foreign to the questions involved. The *People ex rel. Hawes* v. *Walker* (23 Barb. 304) was an action by the people to test the right of the defendant to the office of commissioner of jurors in New York. The power of appointment was given to certain defined officers in the city of New York, and the question was whether such officers had legally executed their power of appointment.

The case of *Ex parte Willcocks* (7 Cowen, 402) was a proceeding under a special statute, on behalf of persons claiming the offices, to test the right of certain other persons to hold the office of directors of the Utica Insurance Company.

*Moore* v. *Rector of St. Thomas* (4 Abb. [N. C.] 51) was the foreclosure of a mortgage alleged to have been given by a religious corporation upon its property, and the corporation set up as a defense that it was not executed by those having authority under the statute to bind the corporation.

The question in all these cases was as to the proper execution of powers, and it was presented in proceedings instituted for the purpose of testing the validity of the performance of the powers conferred, by persons expressly authorized by law to institute the proceedings.

We have found no authority holding that persons having no interest in the question litigated can bring suit to review corporate action with a view of determining whether such action has at all times been in conformity with the rules of law governing such bodies. It is contrary to the general rules of practice for courts to permit parties to institute actions and drag other parties into litigation upon questions in which the plaintiffs have no interest or concern. It was entirely immaterial to the plaintiffs here whether the corporation did business with three or thirteen trustees, or whether they were, each and all, legally elected or not. It was enough for them to know that the duty, which they were interested in having performed, had been actually performed by a board of trustees, duly elected under the by-laws, and having the actual management and control of the corporation with which the plaintiffs had contracted.

In accordance with these views the order of the General Term should be affirmed, and judgment absolute for the defendants dismissing the complaint be ordered, with costs in all courts.

All concur.

Order affirmed and judgment absolute for defendants on stipulation.