(161 App. Div. 107)

### LEWIS v. MATTHEWS et al.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

1. CORPORATIONS (§ 56*)—OFFICERS—DIRECTORS.

A resolution increasing the number of directors does not become operative until the certificate showing the increase is filed in the office of the Secretary of State and the county clerk, as required by the Stock Corporation Law (Consol. Laws, c. 59) § 26.

· [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 152; Dec. Dig. § 56.*]

2. CORPORATIONS (§§ 283, 289*)—DE FACTO OFFICERS.

· An election of directors held before a resolution increasing their number·has become operative by the filing of the certificate required by statute is not void, and, where it is recognized as valid and they assume to act without objection from any one, they become de facto directors, for whose acts the corporation is responsible, and the validity of their election and the title to their office cannot be raised collaterally.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1195, 1198–
· 1205, 1207–1235, 1240–1245; Dec. Dig. §§ 283, 289.*]

3. CORPORATIONS (§§ 308, 312*)—OFFICERS—COMPENSATION.

A vote by the directors to pay the officers for services already performed without agreement as to salary is·without authority and cannot be ratified by a mere majority of the stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349, 1376–1386, 1388–1392; Dec. Dig. §§ 308, 312.*]

4. CORPORATIONS (§ 308*)—STOCKHOLDERS—MANAGEMENT OF CORPORATIVE AFFAIRS.

The fixing of future salaries of the officers of a corporation is a matter of administration within the power of the directors, and, when their action is ratified by a majority of the stockholders, it cannot be disturbed at the instance of the dissenting stockholder in the absence of fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

5. CORPORATIONS (§ 308*)—OFFICERS.

A want of power in a de facto board of directors to pass a resolution fixing the salaries of officers is an irregularity that can be ratified by the stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

Dowling and McLaughlin, JJ., dissenting in part.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Thomas A. Lewis, suing on behalf of himself and other stockholders of the Electric Heat Storage Company similarly situated, against Thomas A. Matthews and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

George W. Seligman, of New York City, for appellants.
James M. Hunt, of New York City, for respondent.

INGRAHAM, P. J. The facts are stated in the opinion of my Brother DOWLING, and I agree with him that the judgment is correct as to the sums of money which the individual defendants paid themselves from the treasury of the defendant corporation for what was called the 1911 salaries. The question as to the salaries received by the individual defendants for the year 1912, however, presents a different question, and I think that the judgment so far as it allows a recovery against the individual defendants for the salaries received by them for the year 1912 cannot be sustained.

[1] The annual meeting of the stockholders of the defendant corporation was held on November 6, 1911. At that meeting a resolution was passed increasing the number of directors from five to seven, and at the same meeting seven directors were elected by the stockholders for the ensuing year. There is no question but that this resolution was valid, and that by it the number of directors was legally increased. Under the statute, however, this increase did not become effectual until a certificate showing the increase was filed in the office of the Secretary of State and in the office of the clerk of the county of New York. See section 26 of the Stock Corporation Law; Matter of Dolgeville E. L. & P. Co., 160 N. Y. 500, 55 N. E. 287; Matter of Westchester Trust Co., 186 N. Y. 215, 78 N. E. 875. Such certificates were not filed in the office of the Secretary of State until November 21, 1911, and in the office of the clerk of the county of New York until November 22, 1911.

[2] At the same meeting of the stockholders which increased the directors, the stockholders elected seven directors for the ensuing year, and the first question presented is whether that election was void because the stockholders actually voted for the seven directors before the filing of the certificates. I do not think it was. The stockholders had power to increase the number of directors, and they had acted by increasing the number of directors. The resolution, however, would not become operative until the resolutions had been duly filed in the office of the Secretary of State and the county clerk. I can see no objection to the stockholders proceeding to elect the directors in accordance with their resolution, who would take office upon the filing of the certificates that made the increase effective. It may be that voting for these directors before the number was finally fixed was an irregularity, and that in a direct proceeding for that purpose it could be corrected, or the court would be justified under such circumstances in ordering a new election; but no such proceeding was taken. The

stockholders and directors recognized the election as valid, and after the resolution was filed as required by the statute the directors, with the assent of the stockholders, certainly without objection from any one, filled the offices and performed their duties during the period for which they were elected. They clearly became de facto directors, and it is clear that their acts became binding on the corporation. I think it would not be disputed that as to third parties an obligation incurred by direction of the board of directors as thus constituted, after the resolution had been duly filed and the increase had become effective, would have bound the corporation, and the corporation could not have defended in an action brought to enforce such an obligation on the ground that this election had been irregular and had taken place before the resolution increasing the directors had become effective. And so as between the corporation and its directors.

The directors certainly would be estopped from claiming that this election was irregular and void as having been held before the increase had become effective by failure to file the certificates as required by statute. And I think the same result must follow where the corporation is endeavoring to assert a claim against the directors for their acts as directors or officers of the company during the period that they held the office of director under this election. It seems to me that at most it was an irregularity which could be corrected by a direct proceeding to require a new election; but, the election having been acquiesced in by all the stockholders of the corporation, neither party could question the right of the directors elected at this meeting to act for the corporation, or attack their title to the office of director collaterally. The election was not void, for the stockholders were entitled to elect five directors. They proceeded to elect seven. There was no objection to the stockholders proceeding to an election until the certificates had been filed, and the directors assumed the duties of the office to which they had been elected and managed the corporation without objection from any one. It seems to me clear that after the certificates were duly filed the directors became acting directors of the company, for whose acts the company was responsible, and that the validity of their election or the title to their office could not be attacked except in a direct proceeding for that purpose.

On the 29th of January, 1912, after these certificates had been duly filed, there was a special meeting of the board of directors held, at which four directors were present, two of whom had been directors for the preceding year. This was a majority of the directors. The two individual defendants, Hill and Matthews, the president and treasurer of the company, were not present. At this meeting a resolution was unanimously adopted fixing the salary of the defendant Hill as president of the corporation at $600 a month, and of the defendant Matthews as treasurer of the corporation at $2,500 a year; such salaries to begin as of the 1st day of January, 1912. It was further resolved that the action of the treasurer in paying the president a salary of $600 a month for the month of January, 1912, was ratified and approved; and it was also resolved that the action of the treasurer in paying the president the sum of $1,131.88 as his expenses for

a trip to England in August and September, 1911, was ratified and approved. These resolutions having been adopted, the defendants Hill and Matthews, the president and treasurer of the corporation, joined the meeting and were present during its further deliberations. Further business was then transacted by the directors and the meeting adjourned. Subsequently, and on the 2d of February, 1912, a meeting of the stockholders of the corporation was held, and there were present in person or by proxy 7,250 shares of stock of the corporation. That meeting had been called by a notice dated January 19, 1912, for the purpose of considering and determining whether the stockholders should ratify, confirm, and approve certain resolutions adopted by the board of directors directing the payment of certain salaries to the president and treasurer and the payments of salaries pursuant to such resolutions.

At that meeting the plaintiff Lewis appeared as a stockholder representing 425 shares of the stock of the corporation. A temporary chairman of the meeting was chosen, when the plaintiff protested against ratifying the resolution of the directors providing for these salaries. A resolution was then proposed that recited that a meeting of the board of directors on the 21st day of November, 1911, a resolution was adopted that the salary of the treasurer be fixed at $2,500 per year for the calendar year 1911, and that in the judgment of the stockholders such compensation was fair and reasonable and such resolution a proper exercise of the discretion of the board of directors. It was resolved that said resolution and the payments to the treasurer Matthews during the year 1911 as compensation for his services to the company as treasurer were in all respects ratified, confirmed, and approved. Tellers were appointed, and this resolution was adopted by a vote of 1,625 shares in the affirmative to 425 shares—the stock owned by the plaintiff in the negative. A similar resolution was passed as to the salary of the president for the year 1911, which resolution was carried by a similar majority. Another resolution was then moved, which recited that at a meeting of the board of directors on the 29th of January, 1912, a resolution fixing the salary of the president at $600 a month and the salary of the treasurer at $2,500 a year, payable monthly, had been passed by the directors, and that the directors further resolved that the action of the treasurer in paying the president the sum of $600 as salary for the month of January was ratified and approved; that the salary of the secretary be fixed at the sum of $500 a year, payable monthly, salary to begin on the 1st day of January; and it was then moved that the resolutions of the board of directors be and the same were in all respects ratified, approved, and confirmed. This resolution was then put to a vote. All the stockholders present or by proxy voted for the resolution, except that the plaintiff declined to vote, and except that Mr. Hill, who was the president, and certain stocks held by Hill and Matthews as proxy, and Hill and Matthews as trustees, and certain other stock held by the trustees, refrained from voting. Plaintiff also protested against the second resolution, but the preamble and resolution were declared adopted by a vote of 833 shares in the affirmative and none in the negative. An-

other resolution approving the payment by the treasurer of the sum of $1,131.88 for the expenses of the president's trip to England in August and September, 1911, was adopted by the same vote.

[3-5] While, with some hesitation, I am inclined to agree with my Brother DOWLING as to the 1911 salaries as money that was taken from the treasury of the company without any authority, for services that were performed as officers of the company, without any agreement, express or implied, that they should be paid for by the company, that a ratification of those payments by the stockholders, they being absolutely without authority when made and a misappropriation of the funds of the company, could not be made by a mere majority of the stockholders, I think it entirely clear that the action of the stockholders in ratifying the action of the board of directors in fixing the salaries of the president and treasurer for the year 1912 was a complete ratification of the action of the directors, and justified the officers of the company in paying the salaries so provided for, and estopped the corporation or the minority stockholders from questioning the validity of the payments or the right of the officers to receive the salaries thus formally fixed. The corporation acted by its board of directors in fixing these salaries, and such action of the board of directors was ratified and adopted by a large majority of the stockholders; the only stockholder objecting being the plaintiff, who was the owner in his own right of but a small minority of the stock. The question was one of the internal management of the corporation—whether the officers whom the corporation had elected should receive compensation for the services that they rendered to the corporation, and the amount of compensation to be paid. It was a question to be determined by the corporation itself, in which neither the people of the state nor the public generally were at all interested, and the stockholders as those interested in the disposition of the property of the corporation were entitled to determine what, if any, compensation should be paid to its officers. Certainly a minority stockholder disagreeing with the majority had no right to impose his will upon the majority and control the action of the corporation. It may be that the salaries were excessive, or that the officers of the corporation in whose favor the salaries were voted had such a control over the other stockholders that they were thereby induced to vote for the resolution. But that was all a question for the stockholders themselves, and they voted apparently intelligently and understandingly. No stockholder—except the plaintiff who protested against the adoption of the resolutions, but refused to vote against them when the vote was cast—objected, or so far as appears has ever since objected to these resolutions, or to the payment of these salaries to the officers of the company. Unless we are to allow a stockholder holding a minority of the stock to control the internal management of the corporation as against the large majority, where no fraud is proved, certainly the effect of the act of the directors ratified by all the stockholders, except one dissenting, cannot be disturbed.

The question as to when a minority stockholder could interfere to control the internal management of a corporation was exhaustively

examined in the case of Gamble v. Queens County Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527. Judge Peckham, in delivering the opinion of the court in that case, said:

"I think that where the action of the majority is plainly a fraud upon, or, in other words, is really oppressive to, the minority shareholders, and the directors or trustees have acted with and formed part of the majority, an action may be sustained by one of the minority shareholders suing in his own behalf and in that of all others coming in, etc., to enjoin the action contemplated, and in which action the corporation should be made a party defendant. It is not, however, every question of mere administration or of policy in which there is a difference of opinion among the shareholders that enables the minority to claim that the action of the majority is oppressive, and which justifies the minority in coming to a court of equity to obtain relief. Generally, the rule must be that in such cases the will of the majority shall govern. The court would not be justified in interfering even in doubtful cases, where the action of the majority might be susceptible of different constructions. To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests."

The facts in that case were then examined in which it had been found that the corporation was paying a grossly excessive price for property purchased by it and in which the president of the corporation was actually interested. In that case the individual selling the property of the corporation was its president and a director, and at a meeting of the stockholders of the corporation he voted as a shareholder to make the purchase. And that case has never, so far as I am aware, been questioned. So far as I can see, neither by the findings nor the evidence was the act of the defendants either as directors or as controlling a majority of the stock of the company, such as would, within the rule here laid down, justify the interference of a court of equity. The question as to the salaries to be paid the officers was, as before stated, a question of the internal management of the corporation to be decided in the first instance by the board of directors and subject to ratification by the stockholders. Thus in Continental Security Co. v. Belmont, 206 N. Y. 7, 99 N. E. 138, it was said:

"As a general rule stockholders cannot act in relation to the ordinary business of a corporation. The body of stockholders have certain authority conferred by statute which must be exercised to enable the corporation to act in specific cases, but except for certain authority conferred by statute, which is mainly permissive or confirmatory, such as consenting to the mortgage, lease, or sale of real property of the corporation, they have no express power given by statute. They are not by any statute in this state given general power of initiative in corporate affairs. Any action by them relating to the details of the corporate business is necessarily in the form of an assent, request, or recommendation. * * * Although it is said that the authority of stockholders in the management of business corporations is exhausted when they elect the directors, *, * * nevertheless it is generally recognized that certain acts of boards of directors that are legal, but voidable, can be ratified and confirmed by a majority of the body of stockholders as the ultimate parties in interest, and thus make them binding upon the corporation. * * * Such recognized authority in stockholders to ratify and confirm the acts of

boards of directors is confined to acts voidable by reason of irregularities in the make-up of the board or otherwise or by reason of the directors or some of them being personally interested in the subject-matter of the contract or act, or for some other similar reason which make the action of the directors voidable."

It thus seems to me settled that the fixing of the salaries of the officers of the corporation was a matter of administration, the power to perform which was given to the directors, and that the resolution of the board of directors fixing the salaries of the individual defendants for the year 1912 was a valid exercise of that power. The question as to the validity of the election of this board of directors could not be raised collaterally in this action. A stockholder could raise that question only in a direct proceeding to set aside the election. As de facto directors they could act as for the company while continuing in the position. Lord v. Equitable L. A. Society, 57 Misc. Rep. 417, 108 N. Y. Supp. 67, affirmed 126 App. Div. 937, 110 N. Y. Supp. 1135, and 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N. S.) 420. If, however, there was any question as to the power of the board of directors to pass this resolution, it was an irregularity that could be ratified by the stockholders, and the action of the stockholders was a complete ratification and made the payment of these dividends or salaries legal.

For this reason I think the corporation was not entitled to a judgment requiring the return of the salaries paid for the year 1912; and the judgment appealed from must be modified by reducing the recovery to the amount of the salaries paid to them for the year 1911, and as thus modified affirmed, with costs to the appellants. The modification of the decision and the reversal of the findings which are opposed to the views hereinbefore expressed can be adjusted on the settlement of the order. The allowance by the plaintiff of costs in the court below is also reversed, and the judgment directing the defendants to pay the 1911 salaries will be without costs.

LAUGHLIN, J., concurs.

HOTCHKISS, J. I concur with Mr. Justice DOWLING as to 1911 salaries. As to those of 1912 the board was composed, not of usurpers, but of de facto directors. Any irregularity in their election was susceptible of ratification. Continental Securities v. Belmont, 206 N. Y. 7–18, 99 N. E. 138.

DOWLING, J. (dissenting in part). Plaintiff, as a stockholder in the Electric Heat Storage Company, seeks an accounting from the defendants Hill and Matthews for all moneys received by them from the company as salaries for the years 1911 and 1912. The corporation was organized in November, 1910, with five directors; the plaintiff becoming the president thereof, with defendant Matthews as treasurer and defendant Hill as secretary. Under the by-laws of the corporation, the duties of the various officers were fixed and determined, and no provision was made thereunder, nor by any resolution of the corporation, for the payment of salaries to any officer or director.

On January 3, 1911, plaintiff resigned as president and Hill succeeded him as such. In August, 1911, by which time but $15,000 had been paid into the treasury of the company, a contract was negotiated by a committee consisting of Lewis, Lawrence, and Hill, with the General Electric Company, whereby the latter paid $50,000, for a non-exclusive license to manufacture under a patent owned by the company, and $25,000 thereof was paid to the Therol Foreign Patent Syndicate; the balance going into the treasury of the defendant corporation. On November 6, 1911, a meeting of the stockholders of the company was held, at which the president's report was submitted, showing that the principal business done up to that time had been the negotiation of the aforesaid license, and a trip abroad taken by the president in connection with the affairs of the company. The report of the treasurer was also submitted, in which appeared an item of, "Labor, $8,788.32." When this was objected to by the plaintiff, it developed for the first time that the defendants Hill and Matthews had been drawing salaries as president and treasurer, respectively, for the year 1911, the payment to the former being at the rate of $7,200 a year, and to the latter at the rate of $2,500 a year. The first payment on these salaries was made June 15, 1911, amounting to $1,800 to Hill and $625 to Matthews.

It is conceded that at the time of such payments there was no resolution, either of the stockholders or of the board of directors, authorizing the same, or any provision of the by-laws requiring or permitting the same.

On November 6, 1911, the annual meeting of the stockholders of the corporation was held, at which a resolution was passed increasing the number of directors thereafter from five to seven. At the same meeting seven directors were elected for the ensuing year, including defendants Hill and Matthews. The certificate showing the increase in the number of directors in the corporation was filed in the office of the Secretary of State on November 21st, and in the office of the clerk of the county of New York on November 22d. On November 21, 1911, the newly elected board of directors of the corporation met, but six directors being present. At that meeting a resolution was passed fixing the salary of the treasurer for the calendar year 1911 at $2,500; five directors voting therefor, and Matthews, the treasurer, refraining from voting. This resolution was offered on the motion of Hill, the president. Then Matthews moved that the salary of the president be fixed at $7,200 for the calendar year 1911 and on this motion, Matthews acting as temporary chariman, the vote was carried by five members, Hill refraining from voting. Upon motion of Mr. Lithgow, seconded by Mr. Barnes, it was resolved that the acts of the treasurer and president in making payments to the president and treasurer upon account of their respective salaries for the calendar year 1911 were ratified and confirmed. For the purpose of putting this resolution Mr. Conklin acted as temporary chairman, and it was carried by a vote of four members; Hill and Matthews refraining from voting. Then on January 29, 1912, a special meeting of the new board of directors was held under the conditions to be hereafter referred

to, at which, until the further action of the board, the salary of the president was fixed at the sum of $600 a month, and the salary of the treasurer at the sum of $2,500 a year, payable monthly, such salaries to begin as of January 1, 1912; also, the action of the treasurer in paying the president the sum of $600 as salary for the month of January, 1912, was ratified and approved.

On February 2, 1912, a special meeting of the stockholders of the corporation was held, at which the action taken by the board of directors on November 21st, in fixing the salaries for 1911, and that of January 29, 1912, fixing the salaries for 1912, was confirmed, 883 votes being registered in the affirmative and none in the negative, certain stock being represented but not voting.

With respect to the salaries for 1911, we think the determination of the court in holding the individual defendants liable on account thereof was clearly correct. There is no implied contract upon the part of the corporation to pay a director or officer for his services as such, and to form the basis for a recovery for such services there must be a pre-existing provision for the payment of such salary, either by resolution or under the by-laws, or proof that the director or officer expected to receive compensation for his services and the corporation intended to pay him for such services. Mather v. Eureka Mfg. Co., 118 N. Y. 629, 23 N. E. 993; Farmers Loan & Trust Co. v. Housatonic R. Co., 152 N. Y. 251, 46 N. E. 504; Stout v. Security Trust & Life Ins. Co., 82 App. Div. 129, 81 N. Y. Supp. 708. In this case not only is there no proof of any such expectation or agreement as to salaries for the year 1911, but the very method adopted of concealing the payments made for that purpose under the deceptive description of "Labor" sufficiently characterizes the whole transaction. Nor do we think that the stockholders, at their meeting held in January, 1912, had the power to ratify the action of the board in so far as it assumed to vote salaries for services rendered during the year 1911. The payment of salaries in the absence of an agreement has been declared to be against public policy (see cases supra), and it has been held that the power of ratification resident in stockholders applies to such acts as are voidable only, and not to such as are prohibited by law, or against public policy. Continental Securities Co. v. Belmont, 206 N. Y. 18, 99 N. E. 138.

With regard to the salaries for the year 1912, a different situation is presented. Here both the directors and stockholders had notice that the officers insisted upon being paid for their services, and the directors had the right to vote a reasonable sum therefor. The exercise of this right, however, is attacked upon the ground that the board of directors as then constituted was an illegal board. This proceeds upon the theory that, inasmuch as the increase in the number of directors did not become operative until the certificate thereof had been filed in the two offices where by statute it is required to be filed (section 26, Stock Corporation Law), and inasmuch as all the directors received the same number of votes, and therefore no five persons can now be claimed to have been legally elected to the exclusion of the other two, the election of the new board of seven was a nullity and that the old board of five held over. In the Matter of Dolgeville E. L. & P. Co., 160 N. Y.

500, 55 N. E. 287, it was held that the number of directors in a corporation was not reduced until after the filing of the transcript showing the action of the corporation, in the two proper public offices. In Matter of Westchester Trust Co., 186 N. Y. 215, 78 N. E. 875, the case just cited was discussed, and it was held that the number of directors could not be deemed to be reduced until after the filing of the transcripts, and that the subsequent filing thereof does not relate back so as to make the election valid. As this election in question was held before the transcripts had actually been filed, it would therefore appear that the old board of five held over. But when the board held its meeting on January 29, 1912, at which these salaries were finally voted, the directors present were Messrs. Crosby, Barnes, Montross, and Conklin. Of these, only two were members of the old board, namely, Messrs. Crosby and Conklin. Barnes and Montross, the other two, were new members of the board. The resolution fixing the salary of the president at $600 a month, and that of the treasurer at $2,500 a year, therefore received the votes of only two of the old board, namely, Crosby and Conklin. While the minutes show that Messrs. Hill and Matthews arrived and were present during the further deliberations, this was after the resolutions in question had been passed, and the only salary question upon which they voted was that fixing the secretary's at $500 a year, which is not in question on this appeal. We should be disposed to hold that, if a majority of the old board voted favorably upon the resolution fixing the salaries for 1912, the ratification of their action by the stockholders would not be subject to attack; but we see no way by which the vote of two out of five of the legally constituted board can furnish a proper basis to sustain such ratification. When the stockholders on February 2, 1912, ratified the action of the board of directors, they did so without knowledge of the fact, either that it was a meeting of an illegally constituted board, or that but two out of the five members of the old board were present at the time the resolution fixing the salaries for the president and treasurer was adopted; for, as a matter of fact, in the form in which it was submitted to them, the resolutions for the salaries for the three officers, president, treasurer, and secretary, appeared consecutively, and there was no information given as to who voted therefor, nor who were present.

Under these conditions, therefore, we believe that the stockholders, not having before them full and complete information of the circumstances under which the board had acted, nor of the legal infirmity attending such action, could not knowingly or legally ratify the attempted action of the board, which was void.

For these reasons we believe the judgment appealed from is correct and should be affirmed in all respects, with costs to the respondent.

McLAUGHLIN, J., concurs.