BERT R. MITCHELL, Plaintiff, v. FOREST CITY PRINTING COMPANY, Defendant.*

(Supreme Court, Tompkins Trial Term, September, 1916.)

*Negotiable instruments — action on notes given to secretary of corporation who was also a director on claim for unpaid salary — when verdict of jury in favor of plaintiff conclusive — motions to set aside verdict and for a new trial and to dismiss the complaint denied — General Corporation Law, § 34.*

MOTION by defendant to set aside verdict and for a new trial. There is also before the court a motion made at the close of the plaintiff's evidence for a dismissal of the complaint, upon which decision was then reserved.

Cobb, Cobb, McAllister, Feinberg & Heath, for plaintiff.

E. J. Cole (James S. Havens, of counsel), for defendant.

DAVIS, J. The plaintiff sues to recover on two promissory notes made by the defendant bearing date February 3, 1915, payable on demand, one for $1,000 and one for $1,500.

---

*Affirmed by Appellate Division, Third Department, May 7, 1919.—[REPR.

The defenses set up in the answer are, that the notes are without consideration; that the directors and officers in existence were illegally holding office at the time the contract was made furnishing consideration for the notes, and at the time the notes themselves were given, and that their acts were void; that the contract was in itself void; and that the notes were executed and delivered as a part of a fraudulent conspiracy.

The defendant is a corporation publishing the Ithaca *Daily News*. Its total capital stock is $30,000. consisting of 100 shares of preferred and 200 shares of common stock, of which all of the preferred and 159 shares of the common stock have been issued. In 1909 and until the time of the trial, the preferred stock was all owned by one Robinson, who also owned 9 shares of the common stock. The remainder was owned in 1909 by Herbert J. Fowler and his wife, Mary E. Fowler, and by Charles E. Westervelt and his wife, C. Annette Westervelt. The certificate of incorporation provided for three directors, but at the annual meeting of stockholders held January 25, 1909, the four stockholders last named were elected directors. No one asserts that this was for any ulterior purpose, and the only apparent reason was to conduct the affairs of the corporation as though it was a copartnership, with these men and their wives holding practically all of the common stock sharing in the management of the business. Again at the annual meeting in 1910, the same four were re-elected, and again in January, 1911. At no time did the only remaining stockholder, Robinson, attend the meetings or object in any way, nor has he ever appeared or intervened in this action, or complained or objected to any of the acts which the defendant has claimed to be fraudulent, collusive or illegal.

At the stockholders' meeting held on January 14,

1910, the minutes show, " Upon resolution of Mrs. Westervelt, seconded by Mrs. Fowler, salaries of H. J. Fowler and Charles E. Westervelt were voted to be $50 per week as heretofore." At a meeting of the board of directors held the same day, a resolution to the same effect was adopted.

On June 29, 1911, at three-thirty P. M., the directors of the defendant were called together to act upon a proposition submitted by Atkinson and Mitchell (the latter being the plaintiff) for the purchase of the property and good will owned by that firm, which was known as the Ithaca *Democrat and Chronicle;* and the board of directors by resolution made said purchase, paying substantially $15,000 therefor.

Atkinson and Mitchell by this transaction and by other agreements each acquired fifty shares of the capital stock, and the Fowlers ceased to be stockholders, leaving Westervelt, Atkinson, and Mitchell the owners of the shares theretofore held by the Fowlers and Westervelts.

Following the purchase of the property at the same meeting Mary E. Fowler, Herbert J. Fowler and C. Annette Westervelt resigned as directors, and Herbert J. Fowler resigned as president and Charles E. Westervelt resigned as secretary and treasurer. All resignations were to take effect immediately, and were accepted. The minutes show that, " Upon resolution the names of Earl E. Atkinson and Bert R. Mitchell were presented for directors and each were elected separately to fill the vacancies caused by the resignations of Mary E. Fowler and C. Annette Westervelt; one ballot was cast for each." The meeting was then adjourned until four P. M. the same day, and the minutes show, "All directors being present, Herbert J. Fowler, Charles E. Westervelt, Earl E. Atkinson and Bert R. Mitchell. President Fowler stated the purpose of the meeting was to elect officers for the com-

pany to serve until the next annual meeting or until their successors should be chosen; the resignation of Herbert J. Fowler as president was accepted as was also his resignation as director, to take effect immediately. The resignation of Charles E. Westervelt was accepted as secretary-treasurer of the company.'' Whereupon Westervelt was elected president, Atkinson treasurer and Mitchell secretary, and a resolution was passed fixing the salaries of the three officers at fifty dollars per week each, dating from July 1, 1911. At a meeting of the stockholders held January 5, 1912, Westervelt, Atkinson and Mitchell were elected directors, each receiving 150 votes. They were re-elected January 3, 1913, and again on January 23, 1914, and again on January 2, 1915.

In February, 1915, at about the time the notes were given, Mitchell made an agreement to sell his stock to Westervelt. It seems that about the time the salary had been voted the three officers had agreed that they would draw in cash each only $30 of the $50 salary voted to them. The only explanation of this is that occasionally the individual officers would make purchases for their personal use from advertisers with them, and credit it on the advertising account. These items were comparatively small in amount. The sum remaining was to be held '' in reserve,'' and as time ran on it was not even entered on the books, but when Mitchell had sold his stock there was in such unpaid salary an accumulation of about $3,200 which it appeared was due to him, and which he claimed from the company. It was compromised with the remaining directors by giving him three notes, one for $250 which was paid, and two in suit.

The defendant also claimed upon the trial that these notes were not given for Mitchell's benefit, but were given to be transferred with his stock to Westervelt who was to use them in replacing notes of his own in

the treasury of the company. However, as the jury has passed on this question adversely to the claim of the defendant and upon sufficient evidence, it is not necessary to discuss it.

Likewise, we may dismiss further consideration of the defense of illegal conspiracy in the sale of the Ithaca *Democrat and Chronicle* at an excessive price.

Such, in brief, is the somewhat complicated state cf facts disclosed upon the trial.

From these facts the defendant argues that prior to the meeting of June 29, 1911, there were four persons acting as directors where but three legally could act. That there were no officers legally elected. That the election of Atkinson and Mitchell to fill the vacancies caused by the resignation of three of the four directors was entirely void. That the pretended new election of officers on that day was entirely void, and therefore, the agreement to pay salaries to the new officers who were managers of the business was wholly illegal and inoperative,— *first,* because there was no valid board of directors to choose officers; and *second,* because the directors had no legal right to vote a salary to themselves.

The original election which occurred in 1909 choosing four directors instead of three, as provided for in the certificate of incorporation, was undoubtedly irregular and voidable. It and the succeeding elections where four directors were chosen could have been set aside by any person in interest who was aggrieved, by application to the court. Business Corp. Law, art. 2, § 2; Stock Corp. Law, art. 3, §§ 25, 26; Gen. Corp. Law, § 32; Code Civ. Pro. § 1948, subd. 1; *Wallace* v. *Walsh,* 125 N. Y. 26, 32; *Matter of Scheel,* 134 App. Div. 442; *Matter of Ringler & Co.,* 204 N. Y. 30; 10 Cyc. 748.

But in a small corporation like the one in question many acts are done informally and irregularly, but

the existence of the corporation continues — it transacts business, it enters into contracts, makes profits,
incurs obligations, and as to the public at least, the
acts of those assuming to be officers even without valid
title, are binding upon the corporation. *Wallace* v.
*Walsh, supra; Lewis* v. *Matthews,* 161 App. Div. 107;
*Matter of Ringler & Co., supra;* Taylor Priv. Corp.
(5th ed.), §§ 188–190.

But it is claimed by the defendant that as to those
within the corporation possessing knowledge of the
irregularities this doctrine as to the acts of *de facto*
officers does not apply, and counsel cite as authority
for this principle, *Matter of Ringler & Co.,* 204 N. Y.
30, 45.

It is very doubtful if after three of those four directors had resigned there was any legal method, except
by a meeting of the stockholders, of filling the vacancies or creating new directors.

Section 34 of the General Corporation Law provides
that a majority of the board of directors of a corporation at a meeting duly assembled shall be necessary
to constitute a quorum for the transaction of business,
and that the members of a corporation may in by-laws
fix the number of directors necessary to constitute a
quorum at a number less than a majority of the board,
but at least equal to one-third of its number. There
is some ambiguity in the minutes of the meeting at
which Atkinson and Mitchell were elected directors,
it not fully appearing whether or not the directors
who had just resigned participated in the election of
their successors, or whether only Fowler and Westervelt participated in filling the vacancies (they both
appearing as directors at the election of officers following, although Fowler had resigned as director),
or whether Westervelt acting alone filled the vacancies. Counsel on the argument, however, have adopted
the view that only Westervelt, the remaining direc-

tor, cast a ballot for the election of his two associate directors, Atkinson and Mitchell, and I will assume that to be the fact.

Section 2 of the by-laws provides that vacancies in the board of directors shall be filled for the unexpired term by a majority vote of the remaining directors at any special or regular meeting of the board. And section 3 provides, in case the entire board of directors shall die or resign, any stockholder may call a special meeting, and directors for the unexpired term may be elected at such meeting.

One director in any event could not constitute a " quorum " or hold a " meeting." Bouvier Law Dict. (3d rev.) 2186, 3790. A " majority " means a majority of the whole number of directors and a quorum remains the same even though there may be vacancies. *Erie Railroad Co.* v. *City of Buffalo,* 180 N. Y. 192, 197. I therefore conclude that the method of filling the vacancies in the board on June 29, 1911, was irregular, and undoubtedly the courts would have declared that action void in any direct proceeding to remove them from office brought by a person interested.

But the directors who held their title to office acquired in that meeting continued to manage the corporation until the next meeting of stockholders, when they were all re-elected and continued so to be until the date of the giving of the notes. The remaining stockholder, Robinson, who was the only person then who had the right to challenge the election, remained silent during these four years. Usage and acquiescence may give validity to an irregularity. *Bowler* v. *American Box Strap Co.,* 22 Misc. Rep. 335; 10 Cyc. 757.

In *Castle* v. *Lewis,* 73 N. Y. 130, where it was sought to set aside a transfer of property because there were but two trustees of a corporation at the time the assignment was made, when legally there should have

been three, the court says at page 134: " The objection that the corporation can only act in the mode prescribed by law we think is not available in these actions, and the defendants are not in a position to raise the same. The corporation received the money loaned from the plaintiff's assignor, and gave title to the property in question for the purpose of securing the same. Although only two trustees acted in making the arrangement, this fact does not authorize the corporation to set up such a defense against the plaintiff's demand. Having received the benefit of the contract which has been executed, even although it may have been made without express authority, it must be allowed to stand, as the plainest rules of good faith demand."

In *Lewis* v. *Matthews,* 161 App. Div. 107, where directors were elected prior to the filing of a certificate of increase in their number, the court says, at page 109: " The stockholders and directors recognized the election as valid, and after the resolution was filed as required by the statute, the directors, with the assent of the stockholders, certainly without objection from any one, filled the offices and performed their duties during the period for which they were elected. They clearly became *de facto* directors, and it is clear that their acts became binding on the corporation. I think it would not be disputed that as to third parties an obligation incurred by direction of the board of directors as thus constituted, * * * would have bound the corporation, and the corporation could not have defended in an action brought to enforce such an obligation on the ground that this election had been irregular and had taken place before the resolution increasing the directors had become effective. And so as between the corporation and its directors. The directors certainly would be estopped from claiming that this election was irregular and

void as having been held before the increase had become effective by failure to file the certificates as required by statute. And I think the same result must follow where the corporation is endeavoring to assert a claim against the directors for their acts as directors or officers of the company during the period that they held the office of director under this election. It seems to me that at most it was an irregularity which could be corrected by a direct proceeding to require a new election; but the election having been acquiesced in by all the stockholders of the corporation, neither party could question the right of the directors elected at this meeting to act for the corporation, or attack their title to the office of director collaterally."

So that whatever view we may take of the manner of filling the vacancies, it would seem that by the doctrines of usage, acquiescence, ratification and estoppel, the defendant cannot now avail itself of this irregularity in the avoidance of a contract for services of which it has had the benefit. Neither would it seem that the validity of the election could be attacked collaterally. *Lewis* v. *Matthews, supra; Wallace* v. *Walsh, supra;* 10 Cyc. 757.

The second objection to the validity of the salary agreement, to wit, that the directors have no right to vote on the question of their own salaries,— is also strongly urged by the defendant. The rule originally was that a director could not preside or be present in a meeting or legally vote on the question of his own compensation as an officer or employee of the corporation. *Butts* v. *Wood,* 37 N. Y. 317; *Kelsey* v. *Sargent,* 40 Hun, 150; *Beers* v. *New York Life Ins. Co.,* 66 id. 75.

The strict rule has become somewhat modified, and the salary voted in such a manner is not necessarily void or illegal, but may be voidable. *Kearns* v. *New*

*York & College Point Ferry Co.,* 19 Misc. Rep. 19; *Murray* v. *Smith,* 166 App. Div. 528, 534.

The rule now seems to be that directors may appoint and fix the compensation of the ministerial officers of the corporation, but in the absence of some provision of statute, by-law or charter, the directors have no authority to vote salaries to each other as mere incidents of their office, nor for services already performed under a stipulated salary. *Godley* v. *Crandall & Godley Co.,* 212 N. Y. 121.

In the case last cited, Miller, J., says, at page 132: "Doubtless the directors of a corporation may employ one of their number to perform services outside of the usual duties pertaining to his office and agree to pay him a salary therefor, and it may be that the act would not be wholly void though he voted for the resolution."

In the case at bar the directors voted a salary to themselves as officers. The duties of officers in managing a printing business and in publishing a newspaper were distinct from their duties as directors of the corporation. They could not be expected to perform these duties without compensation, and if they submitted the question of employment and salary to a stockholders' meeting, it would practically be the same as submitting the question to themselves as directors, because the only remaining stockholder, Robinson, never attended a meeting. It is the element of fraud or collusion in such transactions that makes voidable the acts of directors in voting on salaries in which they participate; and they are regarded as trustees acting in a fiduciary capacity for the stockholders, and the presumption is that they act in their own interest and to the prejudice of the corporation where they are dealing with themselves. *Davids* v. *Davids,* 135 App. Div. 207; *Carr* v. *Kimball,* 153 id. 825; *Jacobson* v. *Brooklyn Lumber Co.,* 184 N. Y. 152. But

in the absence of bad faith, their acts in voting a salary will not be set aside by reason of the disqualification to vote of one or more directors participating therein. 10 Cyc. 790.

The officers continued to draw their salaries in the same manner in the years following 1911 without any new resolution, and it would seem that the holding of stockholders' meetings for four years after the act of the directors in voting salaries, at which meetings the business affairs of the company would naturally be up for discussion,— would furnish such a knowledge to the corporation itself and to its shareholders of the facts that an assent and acquiescence may be implied, and make their action, in the absence of fraud or collusion, binding upon the corporation and persons subsequently becoming interested therein. *Welch* v. *Importers & T. N. Bank,* 122 N. Y. 177; *Barr* v. *New York, L. E. & W. R. R. Co.,* 125 id. 263; *Marbury* v. *Stone,* 17 App. Div. 352; affd., 160 N. Y. 701.

Had this been a suit in equity brought by a minority stockholder claiming that he was the victim of fraud and collusion, and seeking to prevent waste of the corporation funds and property, or for an accounting for money paid out in large increase of salaries and other illegal diversion of a corporation's assets, such as is discussed in *Kreitner* v. *Burgweger,* 174 App. Div. 48, a somewhat different question would be presented. Then all of the facts would be before the court for determination. But the defendant corporation itself is hardly in the same position when seeking to resist payment of notes given for a portion of the salary of a man that had served it for several years. This defense is interposed by the corporation under new management exercising control through stock purchased from these officers who authorized the employment and gave the notes for the services performed. No minority stockholder voices any griev-

ance here. When the question of fact is submitted to a jury as to whether or not the services rendered were of the value claimed by plaintiff, and as to whether his act as director in voting for these salaries was founded on good faith, and putting upon him the burden of showing that his acts were honest, and the jury has found in favor of the plaintiff on these questions, I regard myself concluded by the verdict, and must assume that the acts of the directors complained of were governed by good faith and honest purposes. The motion to dismiss the complaint is denied. The motion for a new trial is denied, with ten dollars costs to the plaintiff.

Ordered accordingly.