DANIEL M. GERARD and THOMAS J. MORRIS, Respondents, v.
EMPIRE SQUARE REALTY COMPANY and Others, Appellants.

Second Department, February 25, 1921.

Corporations — power of majority of directors, acting separately
and not collectively, to bind corporation to executory contract —
acts of all directors who own all stock bind corporation though
they act separately and not collectively — measure of damages
for breach of executory contract of employment — claim for money
expended cannot be included — appeal — question not presented
by record cannot be considered.

In an action to recover for breach of an executory contract of employ-
ment it appeared that the defendant corporations were owned by five
members of a family and that all the stockholders were directors;
that three of the directors acting individually signed a paper, as directors
and stockholders, agreeing to hire the plaintiffs for one year at a stated
salary and agreed to vote to confirm such appointment at the annual
meeting of stockholders; that it was a disputed question on the trial
whether the other two directors and stockholders agreed to or ratified
the paper so signed. The trial court directed a verdict for the plaintiffs
and denied defendants' request to go to the jury on the issues whether
a contract was made, whether the plaintiffs had performed, and upon
the amount of damages.

*Held*, that while the president of a corporation, acting as such, has the
power, *prima facie*, to bind it by any contract that the board of directors
could authorize or ratify, still an employment of the plaintiffs by the
president of the defendant companies cannot be spelled out of a writing
which in expressed terms is a consent as a director and stockholder to
their employment, with a promise to vote to confirm the same at the
next stockholders' meeting.

A majority of the directors acting separately and not collectively at a
meeting cannot bind the corporation by an executory contract, and,
therefore, the judgment on a directed verdict cannot be sustained.

The complaint should not be dismissed, however, but a new trial should
be granted, for where the directors of a corporation own all the capital
stock and are members of the same family but so at variance that directors'
and stockholders' meetings are not held, their action, concurred in by all,
although separately and not as a body, binds the corporation.

The measure of damages for a breach of an executory contract of employ-
ment is not the full amount agreed to be paid for the unrendered services,
but is compensation resulting from the breach, and that question should
have been submitted to the jury.

It was error to include in the directed verdict the amount of the claim by
the plaintiffs for money expended by them for the use of the defendants,
since that was a cause of action distinct from that set forth in the complaint.

The claim of the plaintiffs that the judgment should be affirmed because the defense was not authorized by the corporations cannot be considered, for upon the record the defendant corporations are regularly before the court and the only question presented is the validity of the judgment entered on the directed verdict.

APPEAL by the defendants, Empire Square Realty Company and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Suffolk on the 11th day of March, 1920, and also from an order entered in said clerk's office on the 22d day of March, 1920, denying defendants' motion to set aside the verdict and for a new trial made upon the minutes.

The action is to recover damages for breach of a contract of employment. The case was brought to trial before the court and a jury, and at the end of the trial the court, over the objection and exception of defendants' counsel, directed a verdict for the plaintiffs for $4,675 with interest, upon which a judgment of $4,901.44, damages and costs, was entered, from which the defendants appeal.

The defendants are four corporations each owning a parcel of real property in the city of New York, improved for renting purposes. The entire capital stock of the four corporations is owned by Charles E. Miller, John L. Miller, Jr., Warren A. Miller, George H. Miller (brothers), and Emma J. M. Earp, a sister. These five also constituted the board of directors of each corporation. The officers of the corporations were also the same. Charles E. Miller was president; Mrs. Earp was vice-president; John L. Miller, Jr., was secretary and treasurer and also general manager. There were dissensions in the family, which interfered with the business of the companies and led to the omission of stockholders' and directors' meetings. On February 19, 1919, John L. Miller, Jr., under authority expressly conferred by the boards of directors, appointed plaintiff Gerard, by a written instrument, as aid in managing the business of leasing and collecting the rents of the premises owned by the four corporations. The employment specified no time for continuance, nor compensation, which, however, was arranged at $200 a month, being the amount specially allowed to Miller as general manager. The appointment having been made, John L. Miller, Jr., went on a trip to

the south, and Gerard, with the assistance of plaintiff Morris, managed the business of the four corporations in his absence.

On the 23d of March, 1919, George H. Miller executed and delivered to the plaintiffs a paper which began: "As director and stockholder of the Empire Square Realty Company, Rellim Construction Company, Riverdale Construction Company, and Albertina Realty Co., I hereby agree to the appointment of Daniel M. Gerard and Thomas J. Morris, as agents, to manage the properties owned by the said companies for the ensuing year, commencing April 1st, 1919, at a salary of Six Thousand ($6000.00) Dollars per year, the same to be paid in monthly instalments on the first day of each and every month as it becomes due." Then follows a detailed description of the plaintiffs' duties under said employment, and the document ends with the words: "At the annual meeting of the several companies, I agree to vote to confirm such appointment on the terms above mentioned." On March 24, 1919, an exact duplicate of the paper was signed by W. A. Miller. A few days thereafter Charles E. Miller, the president of the company, also executed a duplicate, except that he appended these words: "And further to adjust the questions arising between the stockholders as to their interests therein and settle matters that may come up including the division of interest in the respective companies."

The plaintiff testified that John L. Miller, Jr., agreed orally to this employment, and contends that Mrs. Earp agreed to it by necessary implication from her conduct, and that the corporations ratified it by accepting the services of the plaintiffs until July first and paying therefor at the rate of $500 per month. John L. Miller, Jr., denied that he knew of or agreed to such employment, and testified that he paid plaintiff Gerard without knowledge thereof, in the belief that he was paying him as assistant to himself under the original appointment. Mrs. Earp denied that she ever knew of or accepted the alleged employment. The plaintiffs claim that they were discharged from the employment on July first by John L. Miller, Jr. John L. Miller, Jr., testified that the plaintiffs left voluntarily. The court directed a verdict for the full amount of the salary for the year.

*Middleton S. Borland* [*Percy F. Griffin* with him on the brief], for the appellants.

*Frederick W. Sparks,* for the respondents.

BLACKMAR, J.:

At the close of the evidence the defendants moved to dismiss the complaint, and the plaintiffs moved for direction of a verdict. The court announced the direction of a verdict for the plaintiffs, whereupon the defendants asked to go to the jury on the issues whether a contract was made, whether the plaintiffs had performed, and upon the amount of damages. The court entertained the motion and denied it, and the defendants duly excepted to the direction of the verdict. This exception presents the question of law whether there were such questions of fact in the case as entitled the defendants to go to the jury. (*Brown Paint Co.* v. *Reinhardt,* 210 N. Y. 162.)

It is written that the president of a business corporation has the power, *prima facie,* to bind it by any contract that the board of directors could authorize or ratify. (*Oakes* v. *C. W. Co.,* 143 N. Y. 430; *Patterson* v. *Robinson,* 116 id. 193; *Davies* v. *Harvey Steel Co.,* 6 App. Div. 166.) But the president of the four corporations did not, by the written instrument set forth in the statement of facts, employ the plaintiffs by virtue of his office as president. It is apparent that an employment by the president of the companies cannot be spelled out of a writing which in expressed terms is a consent as a director and stockholder to their employment, with a promise to vote to confirm the same at the next stockholders' meeting.

The paper was signed by three of the directors out of a full board of five. It is a disputed question of fact whether it was ratified or agreed to by the other two. The judgment cannot be sustained on a directed verdict unless a majority of the board of directors, acting separately and not collectively at a meeting, can bind the corporation by an executory contract. That no such power exists in a majority of the board is an established rule of universal application. The judgment must, therefore, be reversed. The serious question is whether the plaintiffs presented evidence that uncontradicted would justify the finding that there was a contract of employment binding on the corporation. If they did not, this court should

dismiss the complaint. If they did, a new trial should be granted. The plaintiffs are not suing for wages for service performed, but for damages for breach of the contract in discharging them. To establish this cause of action they must prove a contract of employment for a year, made by the defendants through the action of their boards of directors; for this is the contract alleged in the complaint and in the bill of particulars.

Three of the directors have consented in writing, and there is evidence tending to show that the other two also consented. But the directors acted separately and not collectively as a body. There is no doubt that the general rule is that directors must act collectively. In *People's Bank* v. *St. Anthony's R. C. Church* (109 N. Y. 512), Judge ANDREWS, writing for the court, said: " The trustees of a corporation have no separate or individual authority to bind the corporation, and this although the majority or the whole number, acting singly and not collectively as a board, should assent to the particular transaction." There are many other authorities to the same effect. (*Constant* v. *Rector, Wardens & Vestry of St. Albans Church*, 4 Daly, 305; *Catholic F. M. Society* v. *Oussani*, 215 N. Y. 1; *Baldwin* v. *Canfield*, 26 Minn. 43; *United Brethren Church of New London* v. *Vandusen*, 37 Wis. 54.) The principle is recognized in *Young* v. *U. S. Mortgage & Trust Co.* (214 N. Y. 279), for the court, having found that the executive committee acted as a body, decided only that a formal minute or record of the act was not necessary.

I may, therefore, start out with the rule, generally applicable, that directors, acting separately and not collectively as a board, cannot bind the corporation. I will stop a moment to say that there is no room for the application of the doctrine of estoppel; for the plaintiffs are not suing for the value of property or service acquired by the corporation through the irregular act of the directors, but for breach of an executory contract only.

The general rule seems to rest upon two reasons: *First*, that collective action is necessary in order that the act may be deliberately adopted after an opportunity for discussion and an interchange of views; and, *second*, that the directors are, for the purpose of managing the affairs of the corporation, the agents of the stockholders and are given no power to act

otherwise than as a board.    Now, if all the directors are of one mind, the reason first stated is much weakened if not destroyed, for if all are agreed discussion is futile; and if the directors own all the corporate stock the second reason also disappears, for they are both principals and agents and their unanimous acts as directors carry their consent thereto as stockholders.

I think that under the circumstances of the case we are considering, where the directors own all the capital stock of the corporations, where they are members of the same family but so at variance that directors' and stockholders' meetings are not held, their action, concurred in by all, although separately and not as a body, binds the corporation. We must recognize the fact that to a greater and greater degree all business, great and small, is being brought under the management of corporations instead of partnerships; that they are, in perhaps the majority of instances, conducted by officers and directors little informed in the law of corporations, who often act informally, sometimes without meetings or even by-laws.    To hold that in all instances technical conformity to the requirements of the law of corporations is a condition to a valid action by the directors, would be to lay down a rule of law which could be used as a trap for the unwary who deal with corporations, and to permit corporations sometimes to escape liability to which an individual in the same circumstances would be subjected.    I cite some authorities resting upon the principle that I have suggested.    (*Bank of Middletown* v. *Rutland & Washington R. R. Co.*, 1 Shaw [Vt.], 159; *Matter of Great Northern Salt & Chemical Works, Ex parte Kennedy*, 44 L. R. Ch. Div. 472; *Jordan & Co.* v. *Collins & Co.*, 107 Ala. 572; *Burden* v. *Burden*, 159 N. Y. 287; *Hall* v. *Herter Brothers*, 83 Hun, 19; *Sheridan Elec. Light Co.* v. *Chatham Nat. Bank*, 52 id. 575.)    I think, therefore, that if all the directors in the four corporations, being also holders of all the capital stock, agreed to the employment of the plaintiffs, their acts bind the corporations and a contract of employment so made is valid.

There are two other questions of fact that should have been submitted to the jury.    One is whether the plaintiffs were discharged or whether they voluntarily agreed to relinquish the employment, and the other is the question of damages.

The measure of damages is compensation. If the contract is established, the plaintiffs were entitled to $500 a month for services rendered. It cannot as matter of law be said that the true measure of compensation is to award to them the full amount of their salary where the services that were the consideration therefor were not performed. The question of the amount of damages should have been left to the jury to determine the actual loss to the plaintiffs under all the circumstances which may be developed on the new trial.

It was error also to include in the directed verdict the amount of the claim of $175 for money expended by the plaintiffs for the use of the defendants. This is a cause of action distinct from that set forth in the complaint, and it was not competent for the court, against the objection and exception of the defendants, to include the amount of this unalleged cause of action in the award of damages.

The claim of the plaintiffs that the judgment should be affirmed because the defense was not authorized by the corporations, cannot be considered on this appeal. Upon the record before us the defendant corporations are regularly before the court, appearing by an attorney. Nothing is presented on this appeal but the validity of the judgment rendered after due trial upon the issues raised by the pleadings.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

JENKS, P. J., RICH, PUTNAM and JAYCOX, JJ., concur.

Judgment and order reversed and new trial granted, with costs to abide the event.