In the Matter of the Application of AMITY HOLDING CORPORATION, Petitioner, for a Certiorari Order against KENELMN H. EDEN and Others, as Water Commissioners of the Manhasset-Lakeville Water District of the Town of North Hempstead, Nassau County, New York, Respondents.

Second Department, June 9, 1933.

*G. Burchard Smith* [*James L. Dowsey* with him on the brief], for the petitioner.

*Marcus G. Christ* [*Percy F. Griffin* with him on the brief], for the respondents.

CARSWELL, J.   On a petition of Amity Holding Corporation under sections 1283 *et seq.* of the Civil Practice Act, a certiorari order has issued, returnable in this court, pursuant to section 1300 of the Civil Practice Act, to review the action of defendant board of water commissioners in rejecting petitioner's claim.   The claim rejected is for $11,161, with interest from December 7, 1927.

The facts, so far as are essential to a decision, are not in dispute. The dispute relates to their effect.

The defendants are the board of water commissioners of the Manhasset-Lakeville water district of the town of North Hempstead.

The petitioner engaged in a land development operation at Manhasset, within that water district.   It laid water mains in this private development in 1927, to supply with water the houses constructed therein.   It did so in accordance with plans and specifications that conformed to those required by the water district.   It seeks to be repaid for the cost of installation of these water mains. It founds its claims on conversations had by its representative with George D. Smith and Clarence Webb, former members of the board of water commissioners, which board consisted of three persons.   It does not claim that in these conversations either commissioner agreed in terms that the water district would pay for the water mains.   It claims that the talks had with these individuals,

considered in connection with the acts of the board of water commissioners, can be understood only on the theory that the water district recognized that it owned the water mains or agreed to pay for them; in other words, that the circumstances it recounts imply an agreement on the part of the water district to pay for the mains. An examination of these acts, however, discloses that they are equally consistent with an entirely different arrangement, fairly implied from the acts of the parties, which does not involve a recognition that the water district either owned or agreed to purchase the water mains. This different conclusion is more readily accepted when we find that there was no official action by the board *as such* agreeing to take over or pay for the mains, evidenced either by a resolution or by informal proof of action by the board *as such*, as distinguished from acts of individual members not acting as a board. These conversations need not be given in detail. They may be summarized. They are, in substance, that Smith talked with petitioner's representative when the latter inquired about getting a supply of water to petitioner's property. Smith referred him to Webb, another member of the board. Smith states that he remembers that Webb reported to the commission that the installation of water mains was proceeding in petitioner's development in accordance with the requirements of the water district. He states that on other occasions mains were constructed in a similar manner and were taken over and paid for by the commissioners when the streets in which they were laid became a part of the system's highways and when in the judgment of the water commissioners the mains showed a fair percentage of revenue as against the cost of construction. He further states that the petitioner's claim was discussed and that the attitude of the commission was in accord with the foregoing.

Webb makes a similar affidavit. He quotes Jahngen, petitioner's representative, as having asked him whether it would be satisfactory if the Hoban Corporation put in the mains, and that he, Webb, said that it would, as said corporation was familiar with the water district's specifications and requirements. He further states that he told Jahngen that if the water district's regulations were complied with the mains " could become " a part of the water system when the roads were taken into the town system, and that the water district would take the mains into the system under those conditions. Webb, too, says that under like circumstances the water district had " taken over " mains after they were constructed and paid for, and that the district paid for them. He further states that the water mains were connected up with the water district under permits issued by it and that from time to time repairs were made by employees of the water district.

It appears that on November 9, 1928, the petitioner asked the town board of Hempstead to take over the streets in the development, and represented that they were in perfect condition " and all utilities installed," and that on February 4, 1929, before any claim was made to the water commissioners for payment of these water mains, the petitioner conveyed the streets in which the mains were laid to the town of North Hempstead.

It appears that on April 8, 1929, the town superintendent of highways, pursuant to action of the town board, made an order taking the streets into the town system of highways.

It was at this stage that the petitioner filed its first claim with the water district board, on August 27, 1929, at which time Smith and Webb were members, Smith continuing for one year longer and Webb for three months longer. No favorable action was taken upon the claim.

On August 13, 1930, the petitioner asked the water district board to include in its budget an item to pay for the mains, and pursuant to resolution the water district board stated it did not intend to purchase the mains and that it had no power to do so. Smith concurred in this action. The matter came up again from time to time, according to the records of the water board, but no action favorable to the petitioner was taken.

On July 17, 1931, the petitioner's claim, in connection with similar claims, was rejected under a unanimously adopted resolution, and the petitioner was notified on July 24, 1931.

On February 19, 1932, petitioner filed a new proof of claim, supported by the affidavits which recount the conversations had with Smith and Webb; also that the water board's annual revenue for water delivered through these mains is $1,000. On August 5, 1932, the present commissioners rejected the claim on the ground that it was not a legal obligation of the district. Thereupon the certiorari order to this court was obtained.

The defendants are a statutory board. They have no powers other than those given to them by statute. The powers conferred on them as a board may not be exercised except as a board. This record contains no showing that the board *as such* ever exercised any of its powers by way of taking over or agreeing to pay for petitioner's water mains. It is well settled that such a board may exercise its statutory powers only when the members thereof act collectively. (General Construction Law, § 41.) It must act at a meeting where a quorum is present and a majority vote for favorable action obtained. This rule is applied to private corporations, the board of directors of which may not act individually or casually. They must act as a board, that is, act collectively. (*Gerard* v.

*Empire Square Realty Co.*, 195 App. Div. 244, 248; *Barnes* v. *All American Investing Co., Inc.*, 206 id. 631; *Walker* v. *Dunspaugh*, 20 N. Y. 170.)

There is no board action in any formally recorded form that binds the water board to take over and pay for these mains. There is no showing of board action informally evidenced. We have merely the equivocal declarations of two individual members, acting separately and apart from each other and their associates on the board, which declarations are made after they ceased to be members of the water board.

Therefore, assuming the board had power to pay for these water mains and to agree to do this upon an arrangement such as the petitioner invokes, there is no board action that will sustain petitioner's claim.

A further barrier, however, exists in the statutes. The pertinent provisions are section 296-a and section 299 of the Town Law. In 1927 the board had no authority, so far as section 299 was concerned, to take over private mains under any procedure. When section 299 was amended in April, 1929, to enable the board to acquire by purchase water mains laid by a private person or corporation, that power could only be exercised in a manner that enabled the electors to have a voice in it.

In so far as section 296-a is concerned, that statute, in the form in which it was in effect in 1927 and 1929, contained no authorization to extend water mains or systems by purchase thereof from a private person or corporation. The effect of the two sections seems to be that the board could act under section 299, enlarge the water supply system (including purchase of private mains) and make payment therefor by means of bonds after the project had been approved by the electors. When the board saw fit, however, to act under section 296-a, which in terms gave it no power to take over private mains, the cost thereof had to be liquidated by taxation not to exceed a specified rate.

The facts invoked by the petitioner herein show no compliance with either section, and particularly no compliance with section 299, under which the board was authorized under proper procedure to acquire mains installed by a private person or corporation.

On the facts, the vice in petitioner's position is that it assumes that the acts of individual members of the water board and the acts of the water board itself can only be understood on the theory that the water board had purchased or agreed to purchase the water mains. The contrary is the fact. The acts recounted, especially in the light of no official action by the board as such, evidenced formally or informally, fairly imply that this private development

company found it desirable to install these water mains in its own property so as to enable it to sell its lots, and possibly absorbed the cost of such installation in the sales price of lots; that the compliance with the regulations of the water district was due to that being the easiest way in which petitioner could get water to private dwellings in its development, which water was needed to enable petitioner to sell its property. The arrangement between petitioner and its lot buyers, or possibly some other similar motive, actuated the installing of the mains by the petitioner. Having the water district collect the revenue and maintain the service is understandable on the same basis. The furnishing of the water by the water district through pipes owned by the petitioner under these informal circumstances thus operated to the advantage of the petitioner but did not obligate the water district to pay for the water main installation.

The deed to the town of North Hempstead of the streets in which the water mains were laid did not convey the title to the water mains and thus create a bar to petitioner's claim on that ground as against the water district. We may not now pass upon the rights of the parties with respect to these water mains.

It suffices to say, for the reasons indicated, that the claim was properly rejected. A contrary holding would sanction a frustration of statutory safeguards regulating the exercise of power by the water board and disregard the rule that individuals dealing with officers of a public body or corporation must ascertain the extent of the authority of such officers in connection with dealings had with them. (*McDonald* v. *Mayor*, 68 N. Y. 23.) It would, likewise, nullify the statutory provisions designed to enable the qualified voters to approve or disapprove such projects.

The determination should be confirmed and the certiorari proceeding dismissed, with fifty dollars costs and disbursements.

LAZANSKY, P. J., YOUNG, HAGARTY and DAVIS, JJ., concur.

Determination of the board of water commissioners unanimously confirmed and certiorari proceeding dismissed, with fifty dollars costs and disbursements.