■ LESLIE, SEMPLE & GARRISON, INC., Respondent, v GAVIT & CO., INC., Appellant. — Appeal from an order of the Supreme Court at Special Term, entered April 24, 1980 in Schenectady County, which denied defendant's motion for summary judgment dismissing the complaint. Gavit & Co., Inc. (hereafter Gavit), is engaged in the printing and engraving business in the City of Albany. Its sole stockholder is Elizabeth Mullin and her stepson is the president. From the record it would appear that there are no other officers and no directors. On September 18, 1978, upon the invitation of Mr. Mullin, Leslie, Semple and Garrison, Inc. (hereafter Leslie) by its president, Dean Jackson, executed a letter of intent to purchase all of the physical assets, excluding the real estate, of Gavit for $20,000. The acceptance was executed by Gavit's president who allegedly assured Jackson that Mrs. Mullin was desirous of selling the assets. On October 2, 1978, Gavit and Leslie entered into a written contract, signed by the respective presidents, which provided for the sale by Gavit of all inventory, and physical equipment used in the Gavit printing and engraving business. In addition, a covenant not to compete was executed by Frederick Mullin and Elizabeth Mullin and was forwarded with the agreement to Leslie's attorney. The closing date was set for October 10, 1978 but on October 3, 1978 Gavit's attorney wrote the attorney for Leslie to advise that the Mullins were withdrawing their offer to sell and requested that the afore-mentioned documents pertaining thereto be returned. The letter further stated: "Fred told me he spoke with Dean Jackson yesterday and informed him of his mother's misgivings about the transaction". Enclosed with the letter was the Leslie check for the down payment. Nonetheless, on the closing date, Leslie's president and attorney appeared at the office of Gavit's attorney and proffered a check for the balance of the purchase price which was refused. A letter sent to Leslie's attorney on the same day asserted that there had been no formal meeting of the shareholders

---

of Gavit in regard to the sale and that, accordingly, the contract was void. When this action for specific performance was commenced, Gavit answered and among several defenses asserted was the defense that the requirements of section 909 of the Business Corporation Law could not be waived so that no lawful and enforceable contract was consummated. On this ground Gavit moved for summary judgment. Special Term concluded that there was a triable material issue of fact concerning the sole stockholder's participation in the underlying contract and denied the motion. Gavit appeals from that order. We agree with Special Term. Under section 202 of the Business Corporation Law it was within Gavit's power and authority to sell. Section 909 provides the method and does require that the board of directors must authorize such a sale as contemplated here. Also, it requires that the sale be approved by at least a two-thirds vote of the holders of outstanding shares entitled to vote. However, those terms have been somewhat modified by sections 615 and 708 of the Business Corporation Law. Moreover, the clear purpose of section 909 and the predecessor statutes as evidenced by the legislative history was not only to enable corporations to function more efficiently and effectively but, more importantly, to provide more protection for minority stockholders. Surely it was not intended that this shield for minority stockholders be converted to a sword to be wielded for the benefit of sole stockholders against third parties. Leslie contends that Mrs. Mullin authorized Gavit's president to sign the agreement. Lending support to this assertion is the fact that Mrs. Mullin personally signed the covenant not to compete. It is alleged that Mrs. Mullin, through and with her stepson, without directors or other officers or shareholders, ran the corporation. While a sole stockholder, or a controlling one, cannot ordinarily obligate a corporation on an agreement with a third person, an agreement by a sole stockholder has been held to be binding on the corporation where it appeared that the affairs of the corporation had been conducted by such stockholder as his personal matter (*Rafter v Fox Pub. Co.,* 206 App Div 389). Moreover, in the management and affairs of a family corporation, irregularities not directly harmful in their nature will be overlooked, and invalidity will not be sought if the declaration of illegality could work injustice. Courts are not to shut their eyes to the realities of business life (*Haff v Long Is. Fuel Corp.,* 233 App Div 117). If corporate formalities are customarily dispensed with and the affairs of a close corporation are carried on through informal conferences, decisions reached by all the directors and shareholders at informal conferences bind the corporation (see *Gerard v Empire Sq. Realty Co.,* 195 App Div 244). Courts now generally hold that all the shareholders may by acquiescence waive the requirement of a meeting and implicitly authorize corporate acts to be done without a meeting. Further, even if the requirement of a meeting is not waived, a gathering of the participants may be held to be a valid meeting though no special formalities are observed; the presence and participation of all shareholders or members are all that is necessary to constitute a valid meeting (O'Neal, Close Corporation [2d ed], 8.03, p 7). Clearly, the allegations of Leslie's president raise material issues of fact concerning Mrs. Mullin's operation of the enterprise, her participation in the underlying contract of sale, and whether such operation and participation were such as to overcome the necessity for the usual formal technicalities of corporate action so as to estop the sole stockholder from taking advantage of those technicalities. A trial of these and other issues must be had. Order affirmed, with costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Weiss, JJ., concur.