OPINION OF THE COURT
Joseph C. Pastoressa, J.
A bench trial of action No. 1 was conducted before this court at which the court heard testimony from plaintiff Haluk Dincsalman, Erhan Kaatsiz, Bruce Vetri, and Frank Mascolo. Action No. 2 was resolved by stipulation. Based on the credible evidence adduced, including exhibits introduced into evidence and the parties stipulated facts, the court makes the following findings of fact and conclusions of law:
The plaintiffs commenced this action for a permanent injunction seeking an order enjoining defendant Americana Petroleum Corporation from taking any action to enforce an affidavit of confession of judgment (COJ) signed by plaintiff Haluk Dincsalman, individually and as the president of plaintiff MP Associates Suffolk, Inc. (MPA), and an assignment and assumption of lease signed by Dincsalman as president of MPA. In addition, the plaintiffs also seek a court order declaring the COJ and the assignment null and void.
Plaintiff Dincsalman is the president of MPA and Er-Hal Management Corp. Er-Hal is in the business of managing three retail gasoline stations in Shirley, New York. MPA manages one gas station located in Miller Place, New York, pursuant to a long-term lease MPA signed with defendant Miller Beach Commons, Inc. in October 1996. Dincsalman has a 50% co-owner in both Er-Hal and in MPA, Mr. Erhan Kaatsiz. Dincsalman has been purchasing gasoline for the subject gas stations from defendant Americana for the past 20 years, and he has become friendly with Americana’s principal officer, Frank Mascolo. Er-Hal fell behind in its payments to Americana, and as the amounts due and outstanding continued to mount Mascolo repeatedly telephoned Dincsalman who was out of the country in Turkey, demanding that he return home to make payment. *343 Dincsalman indicated that he could not return home for a few weeks but implored Mascolo to continue to make fuel deliveries to his gas stations which Mascolo did because of their longstanding relationship. While Dincsalman was away in Turkey his partner Erhan Kaatsiz had been left in charge and “was running the show.” Mascolo went to Kaatsiz a couple of times to discuss the nonpayment problem and Mascolo indicated that Kaatsiz was aware of it and was aware of how much money was owed to Americana, then having accumulated to over one million dollars outstanding.
Upon his return from Turkey, Mascolo met Dincsalman to discuss how payment would be made and, for his own peace of mind, what type of security Dincsalman could provide to permit Mascolo to continue providing fuel deliveries to him without fear of a recourseless default. Dincsalman proposed the placing of liens on the three separate properties on which the Er-Hal gas stations were operated. However, title searches showed the properties to be already encumbered and worthless as collateral. Mascolo advised Dincsalman that the only asset he had which could serve as adequate security was the lease on the Miller Place gas station managed by MPA. Mascolo proposed that he could take an assignment of that lease as security and Dincsalman responded “go ahead draw up the papers.” The confession of judgment and assignment of lease which is the subject of this action were prepared and presented to Dincsalman and signed by him first without notary and then re-signed with a notary acknowledgment.
The plaintiffs brought this action now seeking a declaration that the subject documents are null and void on the ground that plaintiff Dincsalman had no idea what he was signing, and on the grounds that they are unenforceable for a failure to comply with section 909 of the Business Corporation Law and due to a lack of consideration, and finally on the ground that Americana would be unjustly enriched if it is permitted to enforce the COJ and the assignment.
Having observed the demeanor of the witnesses as they testified and having considered the substance of their testimony, assessing the credibility of the respective witnesses’ claims at trial, the court finds the plaintiffs’ allegations and arguments patently incredible and rejects the plaintiffs’ sought relief in toto as entirely without merit. Indeed, to grant the plaintiffs’ requested relief would work a grave injustice, and, ironically, unjustly enrich not Americana or its principal Mascolo as *344 claimed by the plaintiffs, but rather plaintiff Dincsalman and his co-owner Mr. Erhan Kaatsiz.
At trial, Mr. Dincsalman testified that he just signed the subject papers without reading them. However, on further questioning, he indicated that in over 30 years of business he had probably never signed papers without reading them until, of course, the papers involved in this case. While a doubtful assertion on its face, the court having had the benefit of assessing his demeanor as Dincsalman rendered it, found the claim even more incredible and rejects it as nothing more than a convenient fabrication. Similarly incredible was the testimony of Mr. Erhan Kaatsiz. Mr. Kaatsiz took the stand as a prior felon, having been convicted on federal drug trafficking charges involving cocaine and heroin, and having served eight years in prison. It was shown that in their application for a New York State lottery license for their gas stations, where an applicant’s prior felony conviction would be fatal thereto, the ownership interests of Mr. Kaatsiz in the gas stations was omitted. On repeated questioning throughout his testimony Mr. Kaatsiz displayed evasive responses and would not definitively admit or deny whether he had knowledge of the critical facts at issue in this case including whether he knew of the debt to Americana, knew of the confession of judgment or knew of the assignment of the lease. Specifically, when asked whether he knew of the lease assignment to Americana he testified “I don’t remember,” and when asked whether he discussed it with Mr. Dincsalman he testified “I don’t think so,” and when asked whether he gave his permission for a confession of judgment for the debt of one million dollars to be entered against MP Associates he testified ‘T don’t remember.” In sum, he could not or would not definitively assert that he had no knowledge of the debt outstanding which his companies had run up for fuel deliveries from Americana or that he had no knowledge of the confession of judgment or lease assignment granted as security to insure further fuel deliveries for his gas stations.
Against this backdrop, the plaintiffs now seek to use section 909 of the Business Corporation Law, a statute enacted to protect minority shareholders from the divestment of substantially all of a corporation’s assets without their knowledge, to set aside the subject confession of judgment and lease assignment because those documents were executed without a formal shareholders meeting and, according to plaintiffs, without Mr. Kaatsiz’s knowledge and consent.
*345 Putting aside the questions whether section 909 even applies in the circumstances of this case given that Mr. Kaatsiz is not a minority shareholder but rather a full 50% shareholder, and given that the documents executed were given as security and did not constitute asset transfers ah initio, and given that the documents were executed to insure fuel deliveries to their gas stations which was not outside the scope of the corporation’s “usual or regular course of business” as required for applicability of the statute (indeed, clearly the subject lease assignment and judgment were undertaken in furtherance of MP Associates corporate purposes as it clearly furthered MPA’s corporate purpose to keep the gas station business that occupied the property pursuant to the Miller Beach Commons lease up and running, and the pledge of the judgment and lease assignment preserved its own viability with Americana as a supplier* [see In re Karta Corp., 342 BR 45 (2006) (specifically holding section 909 and analogous section 908 of the Business Corporation Law inapplicable in such circumstances); see also Matter of Ollag Const. Equip. Corp., 446 F Supp 586, 593 (1978) (same), affd in part and revd in part by 578 F2d 904 (1978); see also Westinghouse Credit Corp. v N. D. P. Auto Supplies, 88 AD2d 933 (1982); 277 Park Ave. Corp. v New York Cent. R.R. Co., 194 Misc 417 (1949), affd 275 App Div 1028 (1949)]), the court finds that, under the particular circumstances of this case, to permit the plaintiffs, and, effectively Mr. Kaatsiz, to set aside their obligations duly undertaken, while they received the fuel deliveries and pocketed the cash proceeds from the gas station sales, would be to permit them to utilize section 909 not as the shield for which it was intended, but rather as a sword wielded to effect an injustice (see Leslie, Semple & Garrison v Gavit & Co., 81 AD2d 950 [1981]). The critical uncontroverted facts are that all of the corporate entities involved in this case were closely held with just two equal shareholders, Mr. Dincsalman and Mr. Kaatsiz. It is uncontroverted that there never were any formal shareholder meetings conducted, and it is uncontroverted that at the very time that the subject debt was extant it was Mr. Kaatsiz, the claimed naive, unknowing shareholder, who was, in fact, in country “running the show,” while Mr. Dincsalman was away in Turkey (see Mitchell v Forest City Print. Co., 107 Misc *346 709 [1916], affd 187 App Div 743 [1919]; Barkin Constr. Co. v Goodman, 221 NY 156, 161 [1917]; Haff v Long Is. Fuel Corp., 233 App Div 117 [1931]). Clearly, the record here manifests, and this court finds, as a finding of fact, that the direct and circumstantial evidence establishes that both Dincsalman and Kaatsiz knew of the debt and agreed to and/or acquiesced in and ratified the confession of judgment and lease assignment to keep the fuel deliveries coming and their gas stations running. Under these findings, the court will not vacate the judgment and lease assignment, and they are, accordingly, entitled to full force and effect (see Diamond v Diamond, 307 NY 263, 266 [1954]; Kent v Quicksilver Min. Co., 78 NY 159, 187 [1879]; Capitol Wine & Spirit Corp. v Pokrass, 277 App Div 184 [1950], affd 302 NY 734 [1951]; Commercial Trading Co. v 120 Jane Corp., 27 AD2d 533 [1966]). The plaintiffs’ claims of lack of consideration are similarly without merit (see American Bank & Trust Co. v Lichtenstein, 48 AD2d 790 [1975]).
The plaintiffs’ case is dismissed and the application by Americana to reform the judgment of confession dated December 20, 2007 to correct a clear scrivener’s error and reflect the proper gas stations that received the subject fuel deliveries is granted as factually uncontroverted (see Stonebridge Capital, LLC v Nomura Intl. PLC, 68 AD3d 546 [2009]; O’Neill v Town of Fishkill, 134 AD2d 487 [1987]; Harris v Uhlendorf, 24 NY2d 463 [1969]; Chimart Assoc. v Paul, 66 NY2d 570 [1986]; Isaacs v Schmuck, 245 NY 77 [1927]), and the entry of judgment in action No. 2 is granted in accordance with the parties’ stipulation.

 MP Associates’ account with Americana was concededly current. However, given the huge arrears owed to Americana, a failure to accede to Mascolo’s requested security could have jeopardized fuel deliveries to the Miller Place gas station.